CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
HOWARD SHNEIDER (Bar No. 309492)
(E-Mail:  howard_shneider@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone:  (213) 894-1456
Facsimile:  (213) 894-0081

Attorneys for Defendant
NATHAN WILSON

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 20-516-FMO |
| Plaintiff, | |
| v. | **SUPPLEMENTAL BRIEF IN SUPPORT OF PRETRIAL RELEASE** |
| NATHAN WILSON, | |
| Defendant. | |

Nathan Wilson, through counsel of record, Howard Shneider, files this supplemental brief in support of pretrial release to update the Court on conditions at MDC.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: November 25, 2020      By  */s/ Howard Shneider*

Howard Shneider
Deputy Federal Public Defender
Attorney for Nathan Wilson

1

## MEMORANDUM OF POINTS AND AUTHORITIES

When Wilson filed the bail review application, there were only two active inmate cases of COVID-19 and two active staff member cases at MDC. Dkt. No. 24 at 7. By the time he filed his reply brief a week later, the number of active inmate cases increased drastically to 102. Dkt. No. 28 at 6-7. That number has now more than doubled to 219 active inmate cases of COVID-19 as well as 12 active staff member cases. *See* BOP, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited Nov. 25, 2020). This is now the *fourth largest* BOP outbreak in the entire country, and highlights the exponential spread of the virus through MDC.

The outbreak at MDC mirrors outbreaks at jails and prisons across the country. According to recent research, individuals in prison or jail are *three times* more likely to be infected with COVID-19 than non-incarcerated individuals. *See* Brendan Saloner, Ph.D., et al., *COVID-19 Cases and Deaths in Federal and State Prisons*, 324 JAMA 602, 602-03 (2020) (accounting for demographic, health, and other factors). As the CDC acknowledges, "[p]eople in correctional and detention facilities are at greater risk for some illnesses, such as COVID-19, because of close living arrangements with other people." CDC, *People Who are Incarcerated at Correctional and Detention Facilities* (June 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/faq.html#People; *see also* Cid Standifer & Frances Stead Sellers, *Prisons and Jails Have Become a 'Public Health threat' during the Pandemic, Advocates Say*, WASH. POST (Nov. 11, 2020), https://www.washingtonpost.com/national/coronavirus-outbreaks-prisons/2020/11/11/b8c3a90c-d8d6-11ea-930e-d88518c57dcc_story.html ("A study prepared for the National Commission on Covid-19 and Criminal Justice reports that the rate of coronavirus cases in federal and state prisons is more than four times the national rate. When adjusted for age, sex and ethnicity, the mortality rate in federal prisons is twice that of the general population.").

///

///

2

1      The Warden sent an email on November 23, 2020, describing the continued

2  spread of COVID-19 at MDC. Ex. A. As a result of that spread, the facility has "placed

3  most of MDCLA's housing units on either quarantine or isolation status." *Id.* There will

4  be strict limits on internal movement, and inmates will not be permitted to attend court

5  hearings or communicate with counsel by VTC or phone until at least December 15,

6  2020. *Id.*

7      Until now, MDC allowed quarantined defendants—including COVID-positive

8  defendants—to appear for court proceedings and communicate with counsel via

9  telephone. Now, MDC has adopted a blanket approach to this outbreak that shuts down

10  all avenues of communication with counsel and the courts. The fact Wilson was put in a

11  position where a waiver of presence was necessary to move forward with the bail

12  review hearing as scheduled shows the severity of the situation at MDC.

13      MDC's complete denial of outside communication in any form violates Wilson's

14  constitutional rights of access to counsel and the courts. The Sixth Amendment right to

15  counsel is especially important during the critical pretrial stage. As the Supreme Court

16  has recognized, to "deprive a person of counsel during the period prior to trial may be

17  more damaging than denial of counsel during the trial itself," because what happens at

18  the "earlier, critical stages in the criminal justice process . . . might well settle the

19  accused's fate and reduce the trial itself to a mere formality." *Maine v. Moulton*, 474

20  U.S. 159, 170 (1985) (internal quotation marks omitted); *see also Benjamin v. Fraser*,

21  264 F.3d 175, 185 (2d Cir. 2001). While an inconvenience or slight difficulty

22  contacting counsel will not constitute a Sixth Amendment violation, being held

23  incommunicado surely does. *Compare United States v. Granados*, No. CR 20-00019-

24  CJC-2, 2020 WL 3258401, at *4 (C.D. Cal. June 15, 2020) (finding no Sixth

25  Amendment violation at MDC before the outbreak when the jail remained "open for in

26  person visits at specified times and inmates receive[d] extra time to make legal phone

27  calls" and there was "no evidence that [the individual's] counsel has been unable to

28

communicate with him") *with* Exhibit A. In order to avoid a Sixth Amendment violation, Wilson should be released.

In light of the recent outbreak of COVID-19 at MDC, as well as the reasons outlined in the brief and reply in support of release, appropriate conditions of release can be fashioned and the Court should grant bail.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  November 25, 2020          By  */s/ Howard Shneider*

Howard Shneider
Deputy Federal Public Defender
Attorney for Nathan Wilson

4