1

                      UNITED STATES DISTRICT COURT

2

                  CENTRAL DISTRICT OF CALIFORNIA

3

                       WESTERN DIVISION

4

5

UNITED STATES OF AMERICA,     )

6                           )

                         )

7        PLAINTIFF,        )

                         )

8          V.          )

                         )  CR 20-00516-FMO

9                         )  LOS ANGELES, CALIFORNIA

NATHAN WILSON,          )

10                       )  DECEMBER 1, 2020

                         )

11        DEFENDANT.      )

    ————————————————————————}

12

13                        BAIL HEARING

14         BEFORE THE HONORABLE ROZELLA A. OLIVER

            UNITED STATES MAGISTRATE JUDGE

15

16  APPEARANCES:          SEE NEXT PAGE

17  COURT REPORTER:      RECORDED; AT&T

18  COURTROOM DEPUTY:    DONNAMARIE LUENGO

19  TRANSCRIBER:        DOROTHY BABYKIN

                    COURTHOUSE SERVICES

20                   1218 VALEBROOK PLACE

                    GLENDORA, CALIFORNIA  91740

21                   (626) 963-0566

22

23

24

  PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;

25  TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

1    APPEARANCES:

2    FOR THE PLAINTIFF UNITED STATES OF AMERICA:

3                  NICOLA T. HANNA
                   UNITED STATES ATTORNEY
4                  BRANDON FOX
                   CHIEF, CRIMINAL DIVISION
5                  ASSISTANT UNITED STATES ATTORNEY
                   BY:  SARA MILSTEIN
6                  ASSISTANT UNITED STATES ATTORNEY
                   312 NORTH SPRING STREET
7                  LOS ANGELES, CALIFORNIA  90012

8
     FOR THE DEFENDANT NATHAN WILSON:
9

10                 AMY KARLIN, INTERIM
                   FEDERAL PUBLIC DEFENDER
11                 BY:  HOWARD SHNEIDER
                   DEPUTY FEDERAL PUBLIC DEFENDER
12                 321 EAST SECOND STREET
                   LOS ANGELES, CALIFORNIA   90012
13

14

15

16

17

18

19

20

21

22

23

24

25

3

1                           I N D E X

2      CR 20-00516-FMO                        DECEMBER 1, 2020

3      PROCEEDINGS:   BAIL HEARING

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1          LOS ANGELES, CALIFORNIA; DECEMBER 1, 2020

2          THE CLERK:  THANK YOU, EVERYONE.  WE ARE READY TO

3   BEGIN.

4          THIS COURT IS NOW IN SESSION.

5          THE HONORABLE ROZELLA A. OLIVER, UNITED STATES

6   MAGISTRATE JUDGE IS PRESIDING.

7          WE'RE ON THE RECORD IN CASE CR 20-516, UNITED STATES

8   OF AMERICA VERSUS NATHAN WILSON.

9          COULD WE GET APPEARANCES, PLEASE.

10          MS. MILSTEIN:  GOOD MORNING, YOUR HONOR.

11          SARA MILSTEIN ON BEHALF OF THE UNITED STATES.

12          MR. SHNEIDER:  GOOD MORNING, YOUR HONOR.

13          HOWARD SHNEIDER ON BEHALF OF MR. WILSON.

14          MR. WILSON IS NOT PRESENT DUE TO THE SITUATION AT

15   MDC.  BUT I DID FILE A WAIVER OF APPEARANCE.

16          THE COURT:  ALL RIGHT.

17          GOOD MORNING, EVERYBODY.  THIS IS MAGISTRATE JUDGE

18   OLIVER.

19          WE ARE HERE TODAY ON MR. WILSON'S BAIL REVIEW

20   APPLICATION.  AND JUST SO THAT COUNSEL KNOW WHAT I'M REALLY

21   FOCUSED ON AMONG OTHER THINGS IS MAKING SURE PROCEDURALLY I'VE

22   NOTED EVERYTHING THAT NEEDED TO BE.  SO, IF YOU COULD JUST BEAR

23   WITH ME.

24          SO, WE -- AS I INDICATED, WE'RE HERE TODAY FOR A BAIL

25   REVIEW APPLICATION.

1          MR. SHNEIDER, I BELIEVE THAT YOU FILED THAT ON

2    NOVEMBER 9TH.  AND THAT'S AT DOCKET 23.

3          YOU ALSO FILED A BRIEF IN SUPPORT OF YOUR BAIL REVIEW

4    APPLICATION, WHICH IS AT 24 -- DOCKET -- ECF ENTRY 24.

5          THE GOVERNMENT FILED ITS OPPOSITION TO THE

6    APPLICATION ON NOVEMBER 13TH.  THAT'S AT ECF 26.

7          MR. SHNEIDER, YOU FILED A REPLY.  AND THAT'S AT ECF

8    28.

9          AND THEN YOU ALSO FILED A SUPPLEMENTAL BRIEF IN

10   SUPPORT ON NOVEMBER 25TH.  THAT'S AT ECF 33.

11         I BELIEVE THE SAME DAY YOU ALSO FILED THE WAIVER OF

12   MR. WILSON'S PRESENCE FOR TODAY'S HEARING.  THE WAIVER IS

13   SPECIFIC ONLY I BELIEVE TO THIS BAIL REVIEW HEARING.

14         AND I THINK THAT THAT IS EVERYTHING THAT I HAVE

15   REVIEWED IN PREPARATION FOR TODAY -- OH, PARDON ME.

16         ADDITIONALLY, I HAVE REVIEWED THE PRETRIAL SERVICES

17   SUPPLEMENTAL REPORT.

18         MR. SHNEIDER, DID YOU RECEIVE A COPY OF THAT?

19         MR. SHNEIDER:  YES, I DID.

20         THE COURT:  ALL RIGHT.

21         MS. MILSTEIN, DID YOU RECEIVE A COPY OF PRETRIAL'S

22   SUPPLEMENTAL REPORT?

23         MS. MILSTEIN:  YES, YOUR HONOR.

24         THE COURT:  OKAY.

25         ALL RIGHT.  SO, WHAT I'D LIKE TO DO IS BEGIN FIRST

1    WITH THE WAIVER THAT YOU FILED, MR. SHNEIDER, ON NOVEMBER 25TH.

2              WERE YOU ABLE TO -- IN LIGHT OF WHAT'S GOING ON AT

3    MDC WERE YOU ABLE TO TALK TO MR. WILSON ON THE PHONE?  OR WAS

4    THIS DONE BY LETTER MAIL?

5              HOW WERE YOU ABLE TO GET THE WAIVER?

6              MR. SHNEIDER:  I WAS ABLE TO TALK TO HIM BY PHONE.

7              WHAT HAPPENED WAS ONCE WE WERE TRYING TO GET A DATE

8    FOR THE HEARING, I EMAILED AN URGENT REQUEST TO THE LOBBY

9    EMAIL AND COPIED COUNSEL -- ONE OF MDC'S COUNSEL AND ANOTHER

10   GENTLEMAN WHO I'M NOT SURE WHAT HIS POSITION IS.  BUT THAT WAS

11   THE PROCEDURE WE WERE TOLD TO FOLLOW IF THERE WAS LIKE AN

12   EMERGENCY OR URGENT SITUATION.

13             AND ONE OF THE COUNSEL AT MDC DID HELP FACILITATE A

14   CALL WITH MR. WILSON IN LIGHT OF THE URGENCY OF THE BAIL REVIEW

15   HEARING.  AND I WAS ABLE TO SPEAK WITH HIM ON A LEGAL CALL AND

16   GET ORAL AUTHORIZATION TO SIGN THE WAIVER OF PRESENCE THAT I

17   FILED.  SO, I WAS ABLE TO TALK TO HIM ON THE PHONE ON THAT ONE

18   OCCASION.

19             THE COURT:  OKAY.  ALL RIGHT.

20             AND AS I INDICATED, THE WAIVER OF HIS PRESENCE IS

21   LIMITED ONLY TO DETENTION OR BAIL REVIEW HEARINGS.  THIS IS A

22   BAIL REVIEW HEARING.

23             SO, IN LIGHT OF YOUR REPRESENTATION, MR. SHNEIDER,

24   THAT YOU WERE ABLE TO TELEPHONICALLY COMMUNICATE WITH MR.

25   WILSON, I'M GOING TO ACCEPT THAT -- THE WAIVER AND PROCEED WITH

1    THE BAIL REVIEW HEARING.

2         YOU KNOW, I -- I MEAN, I THINK AS EVERYBODY

3    UNDERSTANDS, YOU KNOW, PROCEEDING WITH SOMETHING LIKE A BAIL

4    REVIEW HEARING OR A DETENTION HEARING WITHOUT THE CHARGED

5    INDIVIDUAL BEING PRESENT IS CONCERNING FOR MANY REASONS.

6         BUT, AGAIN, IN LIGHT OF, MR. SHNEIDER, WHAT YOU SAID

7    ABOUT BEING ABLE TO COMMUNICATE WITH MR. WILSON, I AM GOING TO

8    GO AHEAD AND PROCEED -- ACCEPT THE CONSENT/WAIVER AND PROCEED.

9         OKAY.  SO, NOW I WANT TO TURN TO THE APPLICATION, MR.

10   SHNEIDER -- AND, AGAIN, I JUST WANT TO MAKE SURE THAT I HAVE AS

11   CLEAR A RECORD AS POSSIBLE.

12        YOU FILED YOUR APPLICATION FOR BAIL REVIEW ON

13   NOVEMBER 9TH.  AND THE BAIL REVIEW -- THE REASON FOR THE

14   APPLICATION OR THE NEW INFORMATION IS THAT YOU HAVE ADDITIONAL

15   SURETIES TOTALLING $20,000 -- 10,000 UNSECURED AFFIDAVIT OF

16   SURETY FROM AUNDRELLA DENNINGS AND 10,000 UNSECURED AFFIDAVIT

17   OF SURETY FROM ANGEL AGUIRRE.

18        BUT I WANTED TO ASK MR. SHNEIDER, IN LIGHT OF THE

19   SUPPLEMENTAL BRIEF FILED IN PARTICULAR ON NOVEMBER 25TH, IS

20   THERE ANYTHING ELSE YOU WANT TO ADD AS THE REASON FOR YOUR

21   APPLICATION FOR BAIL REVIEW, OR ARE YOU LIMITING IT TO THE

22   ADDITIONAL SURETIES THAT ARE BEING PROFFERED?

23        MR. SHNEIDER:  THANK YOU FOR BRINGING THAT UP.

24        I WILL ADD THE CONDITIONS AT MDC AS AN ADDITIONAL

25   CHANGED CIRCUMSTANCE THAT I DID NOT INCLUDE IN THE INITIAL

1   BRIEF BECAUSE THE OUTBREAK HADN'T OCCURRED YET.  AND I DIDN'T

2   GO INTO SPECIFICS IN THE REPLY OF THE SUPPLEMENTAL BRIEF ABOUT

3   IT BEING AN ADDITIONAL BASIS BECAUSE MY POSITION IS THAT WE

4   ALREADY HAD A BASIS GIVEN THE ADDITIONAL SURETIES.

5          BUT I DO BELIEVE THAT THE OUTBREAK AT MDC WOULD

6   CONSTITUTE ON ANOTHER CHANGED CIRCUMSTANCE TO ALLOW US TO GO

7   FORWARD WITH THE BAIL REVIEW HEARING.

8          AND ON THAT SAME SIDE, I'LL MENTION UP FRONT.  I DID

9   NOT PUT THIS IN THE BRIEFING BECAUSE I DID NOT QUITE APPRECIATE

10  THE EXTENT OF THE PROBLEMS WITH COMMUNICATION WITH MR. WILSON

11  AT THE TIME.  BUT I WOULD LIKE TO MOVE FORWARD WITH ARGUMENT IN

12  THE ALTERNATIVE AS WELL FOR TEMPORARY RELEASE UNDER 3142(I),

13  WHICH IF YOUR HONOR WANTED BACK-UP BRIEFING ON THAT, I

14  UNDERSTAND.  BUT I DID LET MS. MILSTEIN KNOW THIS MORNING THAT

15  I WOULD PUT THAT ARGUMENT FORWARD IN THE ALTERNATIVE.

16          IT'S MY POSITION THAT BAIL SHOULD BE GRANTED.  BUT IF

17  THE COURT DISAGREES, I WOULD PROCEED WITH AN ALTERNATIVE -- IN

18  THE ALTERNATIVE ARGUMENT FOR TEMPORARY RELEASE UNDER SUBSECTION

19  (I).

20          THE COURT:  OKAY.

21          OKAY.  SO, YOU KNOW, LET ME -- AND, AGAIN, YOU KNOW,

22  I'M NOT TRYING TO PROLONG THIS.  I KNOW THAT EVERYONE IS BUSY.

23  BUT I DO WANT TO MAKE A CLEAR RECORD AND ALSO MAKE SURE THAT I

24  UNDERSTAND EVERY -- ALL OF THE REASONS IN FRONT OF ME SO I'M

25  CLEAR IN MY RULING.

1          SO, MR. SHNEIDER AND MS MILSTEIN, WITH -- IN LIGHT OF

2     THE ADDITIONAL ARGUMENTS OR BASES THAT MR. SHNEIDER WANTS TO

3     MAKE, I'M JUST TRYING TO -- I WILL TELL YOU MY TENTATIVE ON THE

4     APPLICATION SO IF WE WERE TO GO BACK IN TIME BEFORE THE

5     OUTBREAK AND THE TOTAL LOCK-DOWN, MY TENTATIVE WOULD BE THAT

6     THE SURETIES ARE NOT SUFFICIENT TO SECURE HIS PRESENCE AT

7     FUTURE APPEARANCES OR TO REASSURE ME ABOUT THE DANGER THAT HE

8     POSES.

9          SO, WITH THAT IN MIND, IT SOUNDS LIKE YOU NOW ARE

10    ALSO ADDITIONALLY ADDING THE TEMPORARY RELEASE UNDER 3142(I)

11    AND THEN ALSO JUST THE TOTAL LOCK-DOWN.

12         IS THAT RIGHT?  I'M SORRY.  I'M NOT TRYING TO MUDDLE

13    THE RECORD, BUT I THINK IT'S -- JUST IN LIGHT OF EVERYTHING

14    THAT I'M SEEING, ALL THE DISCUSSION ABOUT WHAT'S GOING ON WITH

15    THESE ISSUES, I THINK IT'S IMPORTANT THAT I PAY ATTENTION TO

16    THE EXACT BASES.

17         MR. SHNEIDER:  NO.  EVERYTHING YOU SAID IS CORRECT,

18    YOUR HONOR.  THAT'S ALL CORRECT.

19         THE COURT:  OKAY.  ALL RIGHT.

20         SO, THEN, MS. MILSTEIN, IN LIGHT OF THE ADDITIONAL

21    BASIS, THE TEMPORARY RELEASE UNDER 3142(I), DO YOU WANT TO GO

22    FORWARD OR DOES THE GOVERNMENT WANT TO BRIEF IT SO THAT YOU

23    HAVE IT FOR THE RECORD?

24         MS. MILSTEIN:  I'M HAPPY TO MAKE A RECORD, YOUR

25    HONOR, ORALLY IF THE COURT WILL ACCEPT THAT AS PART OF THE

1    RECORD.

2              I AM -- YOU KNOW, BECAUSE MR. SHNEIDER KIND OF LET ME

3    KNOW THIS MORNING THAT THAT WOULD BE SOMETHING HE'D BE

4    MENTIONING, I HAD PREPARED, YOU KNOW, JUST A BRIEF DISCUSSION

5    ON THAT.  IF THE COURT WOULD PREFER IT IN WRITING, THEN, YOU

6    KNOW, OF COURSE WE'LL DO THAT.  BUT IT'S REALLY THE COURT'S

7    PREFERENCE.  THE GOVERNMENT IS PREPARED TO SPEAK NOW.

8              THE COURT:  OKAY.

9              WELL, WHAT I THINK I'LL DO IS I'LL GO AHEAD AND

10   PROCEED.  AND THEN AT THE END OF THIS, IF SOMEHOW SOMETHING

11   EMERGES AND EITHER COUNSEL THINKS THAT THEY WANT TO BRIEF THIS,

12   OR THEY WANT TO HAVE THE BRIEFS ON FILE BEFORE TAKING ANY

13   ACTION APPEALING IT TO THE DISTRICT COURT OR BEYOND, JUST LET

14   ME KNOW, AND WE'LL DO THAT.

15             SO, HERE'S WHAT I'D LIKE TO DO FIRST.

16             MR. SHNEIDER, I GAVE YOU WHAT MY TENTATIVE IS ON THE

17   BAIL -- THE ADDITIONAL BAIL RESOURCES, WHICH, AGAIN, JUST

18   ATTENDING TO THOSE PRINCIPLES, I FIND THAT BECAUSE YOU HAVE

19   COME FORWARD WITH ADDITIONAL BAIL RESOURCES, I THINK IT

20   WARRANTS REOPENING THE HEARING OR HAVING THE BAIL REVIEW

21   HEARING BECAUSE THIS IS NEW INFORMATION.

22             SO, I'VE LOOKED AT IT.  MS. DENNINGS, I DON'T FIND

23   HER TO BE A VIABLE SURETY, MR. SHNEIDER, JUST BECAUSE OF THE

24   INFORMATION THAT WAS SUPPLIED PREVIOUSLY AT THE INITIAL

25   APPEARANCE CONCERNING THE HISTORY BETWEEN MR. WILSON AND MS.

1  DENNINGS.  I'M CONCERNED ABOUT THAT.

2          AND I ALSO AM CONCERNED AGAIN ABOUT THAT HISTORY

3  ABOUT MR. WILSON RESIDING WITH MS. DENNINGS AND HER CHILDREN.

4          I KNOW THAT YOU HAVE THE OTHER PROFFERED SURETY MR.

5  AGUIRRE.  BUT MY CONCERN HERE IS THAT -- YOU KNOW, I APPRECIATE

6  HIM COMING FORWARD WITH THE 10,000 -- UP TO $10,000. THAT'S A

7  RATHER SIGNIFICANT AMOUNT OF MONEY, ESPECIALLY I THINK NOW WHEN

8  EVERYBODY FINDS THEMSELVES SO CHALLENGED IN THE PANDEMIC WITH

9  WORK OR NOT BEING ABLE TO WORK.

10         BUT I STILL REMAIN REALLY CONCERNED ABOUT WHAT I SEE

11 IN FRONT OF ME -- THE CHARGE, THE POTENTIAL SENTENCE THAT HE'S

12 FACING, HIS HISTORY CONCERNING HAVING -- YOU KNOW, THE

13 ALLEGATION THAT HE SET FIRE TO THIS CAR, THE SANTA MONICA

14 POLICE CAR, AND THEN THE INCIDENT INVOLVING SETTING FIRE TO MS.

15 DENNINGS' CAR.

16         SO, THOSE ARE -- THOSE ARE MY CONCERNS.

17         AGAIN, THIS IS MY TENTATIVE.  BUT OBVIOUSLY IF

18 THERE'S ANYTHING THAT YOU WANT TO SHARE WITH ME THAT'S NOT

19 ALREADY IN YOUR PAPERS, I'M HAPPY TO HEAR FROM YOU, MR.

20 SHNEIDER.

21         MR. SHNEIDER:  THANK YOU, YOUR HONOR.

22         I -- ONE THING I'LL MENTION IS I'VE SPOKEN WITH MS.

23 DENNINGS.  AND SHE HAD INDICATED TO ME THAT SHE WAS GOING TO

24 CALL IN TO THE HEARING.  I'M NOT SURE IF SHE DID THAT OR NOT.

25         BUT FROM MY CONVERSATIONS WITH HER, I UNDERSTAND YOUR

1   HONOR'S CONCERNS BOTH ABOUT WHAT HAPPENED WITH THE CALLER AND

2   OTHER ALLEGATIONS IN THOSE IRVINE POLICE REPORTS.

3        WHAT I WOULD SAY ON THAT FRONT IS THAT FROM TALKING

4   TO MS. DENNINGS, SHE HERSELF HAS EXPRESSED TO ME ON MULTIPLE

5   OCCASIONS THAT SHE WANTS MR. WILSON TO LIVE WITH HER AND HER

6   CHILDREN AND THAT THEY HAVE A CHILD THEY'RE EXPECTING ON THE

7   WAY, THAT SHE'S -- THAT SHE IS PREGNANT RIGHT NOW.  AND THEY'RE

8   EXPECTING A CHILD TOGETHER.

9        AND -- SO, ALL I CAN SAY IS IN ADDITION TO WHAT I

10  FILED IS THAT MS. DENNINGS HERSELF HAS EXPRESSED TO ME ON

11  MULTIPLE OCCASIONS THAT REGARDLESS OF WHAT'S IN THOSE IRVINE

12  POLICE REPORTS, THAT IN REALITY THIS IS NOT A SITUATION WHERE

13  SHE FEELS THREATENED BY HIM IN ANY WAY OR DOES NOT WANT HIM

14  THERE.  THAT, TO THE CONTRARY, SHE DOES WANT HIM THERE, AND

15  THAT HE HELPS A GREAT DEAL WITH HER CHILDREN.  AND HE WAS

16  HELPING TO HOME SCHOOL ONE OF HER CHILDREN.  AND THAT HER AND

17  ALL THREE OF HER CHILDREN ACTUALLY MISS MR. WILSON AND WANT HIM

18  BACK HOME.  SO, I WOULD PUT THAT FORWARD.

19        AND THEN BEYOND THAT I DON'T -- I DON'T HAVE OTHER

20  ADDITIONAL ARGUMENTS BESIDES WHAT I ALREADY LAID OUT IN THE

21  MOVING PAPERS.

22        THE COURT:  OKAY.

23        ALL RIGHT.  MS. MILSTEIN, ANYTHING FROM THE

24  GOVERNMENT?

25        MS. MILSTEIN:  YES, BRIEFLY, YOUR HONOR.  I'LL JUST

1    MAKE A BRIEF RECORD ON THE ADDITIONAL GROUNDS OF 3142(I).

2              AND IF THE COURT HAS QUESTIONS AS TO OTHER ASPECTS OF

3    THE PARTY'S PAPERS AND THE GOVERNMENT'S PAPERS, I'M HAPPY TO

4    ANSWER THEM.

5              THE COURT:  OH, MS. MILSTEIN.

6              MS. MILSTEIN:  UH-HMM.

7              THE COURT:  I'M SORRY.  LET ME JUST INTERRUPT YOU

8    NOW.

9              I WANTED TO -- I'M SORRY.  I SHOULD HAVE SAID -- I'M

10   TRYING TO KIND OF BREAK IT UP AND FIRST ADDRESS THE BAIL -- THE

11   PROFFERED BAIL SURETIES BEFORE TURNING TO THE LOCK-DOWN THAT'S

12   IMPEDING COMMUNICATION AND THE TEMPORARY RELEASE UNDER 3142(I).

13             SO, IF THERE IS ANYTHING SPECIFIC ABOUT THE PROFFERED

14   SURETIES THAT YOU WANTED TO STATE ON THE RECORD RIGHT NOW.

15             MS. MILSTEIN:  GOT IT.  SORRY.

16             APART FROM WHAT THE GOVERNMENT SAID IN ITS PAPERWORK,

17   AND IF THE COURT HAS NO OTHER QUESTIONS, THEN WE'LL JUST SUBMIT

18   ON THE PAPERS, YOUR HONOR.

19             THE COURT:  OKAY.

20             ALL RIGHT.  SO, THEN I JUST -- NOW I'D LIKE TO TURN

21   TO, MR. SHNEIDER, THE ADDITIONAL ARGUMENT OR BASES THAT YOU'RE

22   COMING FORWARD AND ASKING FOR MR. WILSON'S RELEASE, WHICH I

23   UNDERSTAND TO BE THE RECENT DEVELOPMENTS AT MDC THAT HAS

24   RESULTED IN AS I UNDERSTAND IT ALMOST A COMPLETE LACK OF

25   COMMUNICATION OR SOME PRETTY SEVERE RESTRICTIONS ON

14

1   COMMUNICATION BETWEEN EVERYONE WHO IS HELD AT MDC AND THEIR

2   ATTORNEYS SO THAT THOSE BE -- I ASSUME THE RISK OR BEING

3   EXPOSED TO COVID PLUS THE COMMUNICATION CHALLENGES.

4           AND, MR. SHNEIDER, IF THERE'S ANYTHING ELSE THAT YOU

5   WANT TO SAY OR ADDITIONAL ARGUMENT.

6           I DO FEEL LIKE -- AGAIN, THE ARGUMENT ON THIS IS RIPE

7   IN THE RECORD.  SO, IF THERE'S ANYTHING THAT YOU WANT TO PLACE

8   ON THE RECORD NOW, MR. SHNEIDER, PLEASE DO SO.

9           MR. SHNEIDER:  THANK YOU, YOUR HONOR.

10          YES.  I MEAN, I REALIZE THERE REALLY ISN'T ANYTHING

11  IN THE RECORD AT THIS POINT SINCE I DIDN'T PUT IT IN THE

12  BRIEFING.  AND I APOLOGIZE FOR THAT.  IT'S KIND OF BEEN AN

13  EMERGENT SITUATION AT MDC.  AND I WASN'T SURE IF IT MADE SENSE

14  TO PUT NEW ARGUMENTS IN A REPLY OR SUPPLEMENTAL BRIEF.  BUT

15  GIVEN -- GIVEN THE REALITY ON THE GROUND, I APPRECIATE THE

16  OPPORTUNITY TO PUT THE ARGUMENT FORWARD NOW.

17          THERE ARE -- BASED ON AN ARGUMENT THAT, YOU KNOW,

18  3142(I) PERMITS THE TEMPORARY RELEASE EVEN IF THE COURT HAS

19  FOUND THE CLIENT TO BE A DANGER OR A RISK OF NONAPPEARANCE.

20          SO, EVEN IF YOUR HONOR DID CONCLUDE MR. WILSON IS A

21  RISK OF NONAPPEARANCE OR A DANGER TO THE COMMUNITY, TEMPORARY

22  RELEASE UNDER SUBSECTION (I) IS STILL AVAILABLE TO THE COURT.

23          AND WE BELIEVE IT'S APPROPRIATE HERE GIVEN THE

24  SITUATION AT MDC.

25          THE SITUATION AT MDC, YOUR HONOR CORRECTLY STATED IT.

1   IT'S A SITUATION WHERE THE CLIENTS AT MDC ARE ALMOST ENTIRELY

2   INCOMMUNICADO RIGHT NOW.  I WAS ABLE TO HAVE A BRIEF LEGAL CALL

3   WITH MR. WILSON TO HAVE HIM AUTHORIZE THE WAIVER OF PRESENCE,

4   BUT THAT WAS ONLY AFTER SENDING AN URGENTLY MARKED EMAIL AND

5   FOLLOWING UP WITH COUNSEL AT MDC.  IT'S NOT SOMETHING THAT

6   HAPPENED AS A MATTER OF COURSE THAT WAS -- IT'S PRETTY

7   DIFFICULT TO GET THAT CALL.  AND I HAVE NOT BEEN ABLE TO

8   COMMUNICATE WITH MR. WILSON SINCE THE LOCK-DOWN OTHER THAN THAT

9   ONE CALL.

10        AND BY ALL INDICATIONS, WE WON'T HAVE ACCESS AGAIN TO

11   CLIENTS UNTIL AT LEAST DECEMBER 15TH BASED ON A RECENT EMAIL

12   FROM THE WARDEN.  BUT GIVEN THE WAY THE NUMBERS HAVE SPREAD IN

13   TERMS OF THE INFECTION RATES AT MDC, I'M NOT VERY CONFIDENT

14   THAT THAT WILL BE THE DATE WHEN COMMUNICATION RESUMES.

15        THE INITIAL EMAIL FROM THE WARDEN POINTED OUT THAT

16   COMMUNICATIONS WOULD BE HALTED UNTIL FURTHER NOTICE.  IT WAS --

17   IT WAS PHRASED IN A WAY WHERE IT SEEMED INDEFINITE.

18        THE MOST RECENT EMAIL I HAD RESET A DATE WHERE

19   COMMUNICATIONS WOULD BE RECONSIDERED AS OF DECEMBER 15TH, BUT

20   -- BUT STILL THAT'S VERY SPECULATIVE AT THIS POINT WHETHER

21   I'LL BE ABLE TO COMMUNICATE WITH MR. WILSON AGAIN ON THAT DATE

22   OR IF IT WILL BE WEEKS OR MONTHS PAST THAT.  WE REALLY JUST

23   DON'T KNOW.

24        AND AS LONG AS COMMUNICATION IS NOT AVAILABLE, THIS

25   REALLY IS -- IT BECOMES A SIXTH AMENDMENT ISSUE, WHICH I DID

1    LAY OUT A LITTLE BIT IN THE SUPPLEMENTAL BRIEF IN TERMS OF

2    SIXTH AMENDMENT CONCERNS AND ACCESS-TO-COUNSEL CONCERNS.

3          WE ARE IN A STAGE OF THE PROCEEDINGS WHERE IT'S

4    EARLY, AND I AM DOING WHAT I CAN TO INVESTIGATE AND PREPARE FOR

5    TRIAL.  AND IT'S DIFFICULT, TO SAY THE LEAST, GIVEN THAT I

6    DON'T HAVE COMMUNICATION WITH MR. WILSON NOW.

7          SO, GIVEN THE SITUATION, WHAT I'M ASKING THE COURT TO

8    DO IS TEMPORARILY RELEASE MR. WILSON UNTIL AT LEAST THE CURRENT

9    TRIAL DATE OF APRIL 27TH, 2021 OR SUCH TIME WHERE WE COULD

10   REVISIT RELEASE THAT YOUR HONOR DEEMS APPROPRIATE.

11         IN TERMS OF THE RELEASE PLAN, I AT THIS POINT DON'T

12   HAVE ANOTHER RELEASE PLAN OTHER THAN FOR MR. WILSON TO GO LIVE

13   WITH MS. DENNINGS.  THAT'S WHERE HE LIVED SINCE MARCH OF THIS

14   YEAR.  AND THAT IS THE RESIDENCE HE HAS AVAILABLE TO HIM.  I

15   DON'T KNOW WHERE ELSE HE CAN GO RIGHT NOW.

16         IF YOUR HONOR WAS INCLINED TO GRANT TEMPORARY

17   RELEASE, AND THE RESIDENCE ISSUE WAS SOMETHING PREVENTING THE

18   COURT FROM DOING SO, AND I -- IF YOU WANTED TO PUT THE MATTER

19   OVER FOR A COUPLE OF DAYS, I CAN MAKE SOME CALLS AND SEE IF

20   THERE'S SOMEONE ELSE WHO IS WILLING TO ALLOW MR. WILSON TO LIVE

21   WITH THEM.

22         BUT TODAY MS. DENNINGS IS THE ONLY OPTION I CAN PUT

23   FORWARD.

24         I WOULD SAY THAT PUTTING HIM ON HOME DETENTION ON AN

25   ANKLE MONITOR WITH WHATEVER OTHER RESTRICTIONS YOUR HONOR SEES

17

1  FIT CAN SECURE THE SAFETY OF THE COMMUNITY AND MS. DENNINGS AND

2  HER FAMILY.  AGAIN, MS. DENNINGS WANTS HIM BACK, THOUGH.  SHE'S

3  TOLD ME THIS SEVERAL TIMES.

4          THE IRVINE CAR FIRE SITUATION WAS NEVER CHARGED AS A

5  CRIME.  THERE IS NOT EVIDENCE THAT MR. WILSON PURPOSELY SET A

6  CAR ON FIRE OR THAT HE EVEN SET A CAR ON FIRE AT ALL.  I KNOW

7  THAT MS. DENNINGS CALLED THE POLICE ON HIM, BUT NO ONE SAW HIM

8  DO ANYTHING.  AND HIS OWN PERSONAL PROPERTY WAS DESTROYED IN

9  THAT FIRE.

10          SO, I'M PUTTING FORWARD TEMPORARY RELEASE PLAN TO MS.

11  DENNINGS, UNDERSTANDING THAT YOUR HONOR HAS EXPRESSED

12  RESERVATIONS ABOUT THAT.  BUT THAT'S THE ONLY RESIDENCE

13  AVAILABLE RIGHT NOW.

14          I WILL ALSO SAY IT'S A TEMPORARY RELEASE.  I

15  UNDERSTAND THAT IT'S A SITUATION AFFECTING EVERYONE AT MDC.

16  BUT I AM JUST ASKING FOR MR. WILSON TO BE RELEASED.  I'M NOT

17  MAKING A WHOLESALE ARGUMENT FOR EVERYONE AT MDC AND THEIR EVERY

18  SITUATION.

19          WHAT I AM ARGUING IS THAT UNDER THESE CIRCUMSTANCES,

20  GIVEN MR. WILSON'S HISTORY AND CHARACTERISTICS AND A TRIAL DATE

21  THAT'S SET IN APRIL, YOU KNOW, IT'S NOT LIKE A YEAR OR TWO

22  YEARS OUT.  IT'S WITHIN EYESHOT.  A TEMPORARY RELEASE IS

23  APPROPRIATE UNTIL THE TRIAL DATE OR, AGAIN, AT LEAST -- AT

24  LEAST FOR THE NEXT MONTH OR TWO WHILE THINGS GET HASHED OUT AT

25  MDC.

1          YOU KNOW, WHATEVER DATE YOUR HONOR THINKS IS

2     APPROPRIATE IS WHAT WE'RE ASKING FOR GIVEN THE SITUATION AT

3     MDC.

4          AND I THINK -- I THINK THAT IS ALL I WOULD PUT

5     FORWARD UNLESS YOUR HONOR HAS FURTHER QUESTIONS ABOUT THE

6     SITUATION AT MDC.  I THINK YOUR HONOR COVERED IT PRETTY WELL.

7          AND BETWEEN THE FILINGS AND WHAT I JUST STATED, I

8     THINK THE RECORD SHOULD BE CLEAR ABOUT THE SITUATION HERE.  BUT

9     IF YOUR HONOR DOES HAVE SOME MORE QUESTIONS ABOUT SPECIFIC

10    CIRCUMSTANCES, THEN, I CAN TRY TO ELABORATE.

11          THE COURT:  THANK YOU SO MUCH, MR. SHNEIDER.

12          SO -- AND, AGAIN, I'LL JUST SAY THAT IF THE PARTIES

13    WANT TO BRIEF THE -- ANYTHING IN PARTICULAR ABOUT THE TEMPORARY

14    RELEASE.

15          I DID DO SOME RESEARCH INTO 3142(I) AND THE CASE LAW,

16    MR. SHNEIDER.  AND IT SEEMS TO ME THAT WHAT I SEE CONSISTENTLY

17    COMING OUT OF THE CASE LAW IS -- WELL, JUST GENERALLY THAT THE

18    TEMPORARY RELEASES SHOULD ONLY BE DONE IN EXTRAORDINARY

19    CIRCUMSTANCES.

20          AND THEN I THINK THE NEXT QUESTION IS, WELL, WHAT

21    DOES THAT MEAN EXTRAORDINARY.  I MEAN, I THINK WHAT'S GOING ON

22    NOW IS EXTRAORDINARY, RIGHT? -- IT'S CERTAINLY OUT OF THE

23    ORDINARY THAT WE HAVE THIS LOCK-DOWN WITH SUCH RESTRICTIVE

24    COMMUNICATION OR, YOU KNOW, ALMOST NO COMMUNICATION.

25          AND I APPRECIATE WHAT YOU -- THE NOD THERE, MR.

1    SHNEIDER, TO -- ONLY FOR MR. WILSON.  BECAUSE IT DOES BEG THE

2    QUESTION, WELL, THIS APPLIES TO EVERYBODY WHO'S DETAINED AT MDC

3    RIGHT NOW.  SO, SHOULD EVERYBODY BE RELEASED.

4         AT LEAST FROM MY REVIEW OF THE CASE LAW, IT REALLY

5    SEEMS TO FOCUS ON INDIVIDUALIZED OR PARTICULAR REASONS THAT A

6    SPECIFIC INDIVIDUAL, A SPECIFIC DEFENDANT SHOULD BE RELEASED.

7         AND I DON'T HEAR THAT -- SO I HEAR THE IMMINENT TRIAL

8    DATE, WHICH IS APRIL.  YOU KNOW, I'LL QUERY WHETHER OR NOT -- I

9    GUESS WHETHER OR NOT THAT IS IMMINENT.  I'M NOT SURE WHAT'S

10   IMMINENT ANYMORE WHEN WE HAVE NO JURY TRIALS GOING FORWARD.

11        I THINK I'VE RAISED THOSE OTHER ISSUES.  BUT IN TERMS

12   OF WHETHER OR NOT IT'S IMMINENT FOR PURPOSES OF A TEMPORARY

13   RELEASE, I GUESS I DON'T -- I DON'T KNOW THAT IT IS.

14        I HAVEN'T HEARD THAT MR. WILSON HAS ANY HIGH-RISK

15   FACTORS THAT MAKE HIS CONTINUED DETENTION AT MDC AND THE RISK

16   OF EXPOSURE TO COVID PARTICULARLY CONCERNING OR COMPELLING

17   GIVEN THE LANGUAGE OF 3142(I).

18        SO, I GUESS JUST -- AND, AGAIN, I JUST WANT TO MAKE

19   SURE IN TERMS OF MAKING A RULING -- PREPARATION OF THE DEFENSE.

20        SO, WE HAVE A TRIAL DATE IN APRIL.  AND CERTAINLY THE

21   PARTIES COULD STIPULATE TO ANOTHER SPEEDY TRIAL EXTENSION.

22        AND, AGAIN, IN TERMS OF WHAT I THINK THE STATUTORY

23   SCHEME CALLS FOR IS REALLY A PARTICULARIZED OR AN

24   INDIVIDUALIZED ASSESSMENT AND FINDING, A RULING.  SO, THE

25   RESTRICTION ON COMMUNICATION IS TRUE FOR EVERYBODY.  I DON'T

1 HEAR HEALTH -- A PARTICULAR HEALTH -- VIRUS HEALTH REASONS FOR

2 HIS RELEASE.

3    AND ANY OTHER COMPELLING REASON? -- AGAIN, I'M

4 LOOKING AT THE STATUTORY LANGUAGE HERE, 3142(I).

5    ANY OTHER COMPELLING REASON THAT YOU WANT TO PUT ON

6 THE RECORD, MR. SHNEIDER?

7    MR. SHNEIDER:  NOT ANOTHER COMPELLING REASON, YOUR

8 HONOR.  BUT I WOULD JUST POINT -- AND YOUR HONOR QUOTED THIS

9 LANGUAGE I BELIEVE, BUT THAT JUST THE LANGUAGE OF 3142(I) IS

10 THAT TO THE EXTENT THAT THE JUDICIAL OFFICER DETERMINES SUCH

11 RELEASE TO BE NECESSARY FOR PREPARATION OF THE PERSON'S DEFENSE

12 OR FOR ANOTHER COMPELLING REASON.

13    AND, SO, I WOULD ARGUE THAT FOR THE PREPARATION OF

14 OUR DEFENSE HERE, RELEASE IS REQUIRED AT LEAST UNTIL

15 COMMUNICATION IS RESUMED AT MDC.

16    YOUR HONOR IS CORRECT THAT MR. WILSON DOES NOT SUFFER

17 FROM ANY PREEXISTING CONDITION THAT PUT HIM IN AN AT-RISK

18 CATEGORY FOR COVID-19 OR AT LEAST NONE THAT I'M AWARE OF.  IT'S

19 POSSIBLE I MISSED SOMETHING.  BUT FROM MY BASIC KNOWLEDGE HE

20 DOES NOT.

21    AND, SO, THAT -- THERE IS A LOT OF CASE LAW THAT I'VE

22 READ BEFORE ABOUT THAT SCENARIO, AND WE'RE NOT -- I DO AGREE

23 WE'RE NOT IN THAT SCENARIO WHERE THERE'S A HEALTH RISK.  THAT'S

24 DIFFERENT BECAUSE THE PERSON IS IN AN AT-RISK CATEGORY.

25    BUT I DO BELIEVE THAT -- ALSO YOUR HONOR POINTED OUT

1    JUST A GENERAL SORT OF EXCEEDINGLY RARE CIRCUMSTANCES OF A

2    TOTAL LOCK-DOWN FOR THE FORESEEABLE FUTURE AND THE LACK OF

3    COMMUNICATION WITH COUNSEL ARE REASON ENOUGH FOR TEMPORARY

4    RELEASE.

5            BUT I DO NOT HAVE ANYTHING IN ADDITION TO THOSE

6    ARGUMENTS.

7            THE COURT:  OKAY.

8            ALL RIGHT.  MS. MILSTEIN, I'LL HEAR FROM YOU.  YOU

9    MENTIONED THAT YOU'RE PREPARED TO STATE THE GOVERNMENT'S

10   POSITION GENERALLY AND, IN PARTICULAR, WITH RESPECT TO

11   TEMPORARY RELEASE UNDER 3142(I).

12           IF I COULD -- OBVIOUSLY, TAKE YOUR TIME TO MAKE THE

13   RECORD.  BUT IF YOU COULD WEAVE IN A RESPONSE TO THE -- MR.

14   SHNEIDER INDICATED THAT THE EARLIEST THAT THE WARDEN AT MDC

15   EXPECTS TO HAVE A RESUMPTION OF COMMUNICATION IS MID-DECEMBER.

16           AND MY UNDERSTANDING IS THE TOTAL LOCK-DOWN BEGAN

17   NOVEMBER 16TH.  THAT'S ABOUT A MONTH, WHICH IS A REALLY LONG

18   PERIOD OF TIME.

19           AND I SUPPOSE IT'S SOMEWHAT HYPOTHETICAL, BUT MR.

20   SHNEIDER RAISED IT, WHAT IF THAT'S CONTINUED? -- THAT'S

21   EXTENDED?

22           IN OTHER WORDS, IT TRULY DOES BECOME INDEFINITE THAT

23   THE WARDEN SENDS OUT ANOTHER MESSAGE SAYING WE HAVEN'T BEEN

24   ABLE TO REDUCE THE NUMBERS.  WE'RE STILL FOLLOWING THE SAME

25   MEASURES TO -- TO CONTROL THE OUTBREAK.  AND THEN WE FIND

1   OURSELVES IN JANUARY WITH NO COMMUNICATION.

2            MS. MILSTEIN?

3            MS. MILSTEIN:  YES, YOUR HONOR.

4            SO, I'VE -- I'VE TAKEN NOTE OF THE COURT'S QUESTION.

5   I WILL CERTAINLY WEAVE IN A RESPONSE TO THAT JUST SO -- JUST TO

6   SORT OF MAKE THE RECORD.

7            THE GOVERNMENT'S POSITION IS THAT THE DEFENDANT IS

8   INELIGIBLE FOR TEMPORARY RELEASE UNDER TITLE 18, U.S. CODE

9   SECTION 3142(I) LARGELY FOR THE REASONS THAT THE COURT HAS

10  POINTED OUT, NAMELY, THE "TUITIVE" RELEASE WHICH DEFENDANT AT

11  LEAST INITIALLY SOUGHT -- SOUGHT TO THE TRIAL DATE, WHICH, YOU

12  KNOW, COULD BE EXTENDED.  AND, SO, THAT IS NO LONGER A PERIOD

13  OF TEMPORARY RELEASE, BUT IT'S RATHER INDEFINITE.

14           AND A PERIOD OF INDEFINITE RELEASE IS NOT A REMEDY

15  THAT IS AVAILABLE UNDER THAT STATUTE.

16           MOREOVER, AS THE STATUTE ITSELF AND THE CASE LAW

17  ABOUT THE STATUTE INDICATE THERE IS NO SORT OF SITUATION

18  SPECIFIC TO DEFENDANT, MEANING SPECIFIC TO DEFENDANT OR HIS

19  CASE, THAT REQUIRE HIM TO BE RELEASED TEMPORARILY EVEN IF THE

20  TEMPORARY RELEASE IS SOMETHING THAT HE'D BE WANTING.

21           THE CASE LAW -- PERHAPS THE COURT HAS SEEN UNITED

22  STATES VERSUS STEVENS.  THAT'S A CASE OUT OF NEW YORK.

23           IN THAT CASE THE DEFENDANT -- THERE WAS SOME SORT OF

24  FACTUAL CHANGES THAT ARE NOT PRESENT IN THIS CASE THAT SORT OF

25  CAST DOUBT ON THE DEFENDANT'S DANGER.  AGAIN NOT PRESENT HERE.

1          BUT ALSO IT WAS THE CASE THERE THAT THERE WAS A

2    SPECIFIC HEARING FOR WHICH THE DEFENDANT WISHED TO PREPARE.

3    AND TEMPORARY RELEASE WAS GRANTED IN THAT SITUATION.

4          AND NONE OF THOSE FACTORS ARE PRESENT HERE.

5          THE GOVERNMENT IN NO WAY WANTS TO MINIMIZE THE

6    COVID-19 CRISIS, ITS EFFECT ON THE COURT, A COMMUNITY, AND NO

7    LESS DEFENDANTS CURRENTLY INCARCERATED AT MDC OR OTHER

8    FACILITIES.  IT IS EXTREMELY SERIOUS AND EXTREMELY IMPACTFUL ON

9    THE DAILY LIVES OF EVERYONE.

10          BUT THAT SITUATION AFFECTS ALL DEFENDANTS AND ALL

11   PEOPLE.  AND AS MR. SHNEIDER NOTED, THE DEFENDANT IS NOT IN A

12   RISK CATEGORY THAT MAKES HIM MORE LIKELY TO CONTRACT SERIOUS

13   SYMPTOMS OF COVID-19.  AND, SO, IF HE HAS NO REAL SPECIFIC

14   CASE, SPECIFIC PERSONAL SPECIFIC REASONS TO BE RELEASED UNDER

15   3142(I), RATHER, THE REASONS THAT WOULD MILITATE TOWARD MR.

16   WILSON'S RELEASE WOULD JUST MILITATE TOWARD EVERYONE'S RELEASE.

17          AND I KNOW DEFENSE COUNSEL IS NOT ARGUING HERE

18   EVERYONE'S RELEASE.  AND THAT'S CERTAINLY NOT THE ISSUE HERE.

19   BUT THE RELEVANCE OF THAT ARGUMENT IS THAT HIS ARGUMENTS ARE

20   NOT CASE SPECIFIC AS BOTH THE STATUTE AND THE CASE LAW

21   REQUIRES.

22          NOW, OF COURSE, THAT BEGS THE QUESTION THAT THE COURT

23   ASKED, WHICH IS, YOU KNOW, WHAT IF THE LOCK-DOWN IS CONTINUED

24   AND EXTENDED.

25          LORD HOPING, THAT DOES NOT HAPPEN.  BECAUSE, YOU

1    KNOW, I DO PERSONALLY SEE IT AS VERY CONCERNING.  I DO THINK

2    THAT, YOU KNOW, AS THE CASE LAW IN THE NINTH CIRCUIT SAYS THERE

3    COMES A POINT WHEN INABILITY TO COMMUNICATE WITH COUNSEL AND

4    PREPARE FOR A DEFENSE BECOMES A CONSTITUTIONAL VIOLATION.  THIS

5    IS NOT IT.

6            I'VE DONE SOME RESEARCH ON SIXTH AMENDMENT LAW.  AND

7    WHERE -- IN SITUATIONS WHERE THERE IS A FOUNDATION FOR A BUREAU

8    OF PRISONS' REASONING FOR LIMITING ACCESS TO COUNSEL.  SO, A

9    LOT OF CASE LAW HAS TO DO WITH A DEFENDANT'S VIOLATIONS OF THE

10   BOP'S RULES AND THAT PERSON PUT IN ISOLATION, FOR EXAMPLE.

11           WHERE THERE IS GOOD REASON FOR BOP TO LIMIT ACCESS,

12   FOR EXAMPLE.  THE NINTH CIRCUIT HAS FOUND THAT TO BE JUSTIFIED.

13           NOW, FROM A HUMAN PERSPECTIVE, I'LL BE FRANK WITH THE

14   COURT AND WITH DEFENSE COUNSEL THAT I DO THINK THAT, YOU KNOW,

15   THE COURT AND MY OFFICE WILL HAVE TO DO SOME THINKING ABOUT,

16   YOU KNOW, HOW TO INSURE THE DEFENDANTS HAVE ACCESS TO THEIR

17   COUNSEL IF THE SITUATION, GOD FORBID, CONTINUES.

18           I WOULD JUST SAY THAT THAT TIME HAS NOT COME NOW.  A

19   MONTH IS A LONG TIME.

20           BUT AS DEFENSE COUNSEL SHOWED TODAY, HE WAS ABLE TO

21   ACCESS HIS CLIENT IT SEEMS BY MAKING A REQUEST AND MARKING THE

22   SUBJECT CLIENT URGENT.  BUT, YOU KNOW, WHILE WE DON'T THINK

23   THAT COMMUNICATION WITH DEFENDANT SHOULD BE EVEN THAT

24   DIFFICULT, THAT DOESN'T SEEM LIKE AN EXTRAORDINARY --

25   EXTRAORDINARILY DIFFICULT THING TO DO.

1       AND HERE WHERE THERE'S NOTHING FORESEEABLE ON

2   CALENDAR, EXCEPT MAYBE DEFENDANT FILED A MOTION FOR SOME GRAND

3   JURY RELATED DISCOVERY, BUT THERE WAS NOTHING ELSE FORESEEABLE

4   ON CALENDAR UNTIL THE APRIL TRIAL DATE, THERE -- YOU KNOW,

5   THERE'S NO SPECIFIC REASONS FOR DEFENSE AND DEFENDANT TO

6   COMMUNICATE.

7       NOW, WITH NO JUDGMENT OR OPINION ON THEIR FREQUENCY

8   OR STYLE OF COMMUNICATION.  BUT WHAT I WOULD SAY IS THAT, YOU

9   KNOW, IF PAST -- PAST SORT OF VIRAL TRENDS HAVE BEEN

10  CONSISTENT, WE ARE, IT SEEMS, ACCORDING TO THE NEWSPAPERS IN

11  FOR A COUPLE MORE WEEKS OF DIFFICULT TIMES.  AND, YOU KNOW,

12  HOPEFULLY, WE'LL HAVE SOME LIGHT AT THE END OF THE TUNNEL THAT

13  WILL ALSO REACH PEOPLE AT MDC.

14      AND, SO, UNLESS THE COURT HAS OTHER QUESTIONS, I'M

15  SORRY I DON'T HAVE A SPECIFIC RESPONSE FROM MY OFFICE ABOUT,

16  YOU KNOW, WHETHER -- WHAT WILL HAPPEN WHEN -- IF THE LOCK-DOWN

17  CONTINUES.  BUT ALL I CAN SAY IS THAT, YOU KNOW, WE TAKE VERY

18  SERIOUSLY -- AT LEAST I CERTAINLY DO -- TAKE VERY SERIOUSLY

19  DEFENDANT'S ACCESS TO COUNSEL AND, YOU KNOW, DO NOT WANT TO

20  PARTICIPATE IN A CASE IN WHICH THERE IS NO ACCESS FOR A

21  PROLONGED PERIOD OF TIME SUCH THAT THE DEFENDANT'S

22  CONSTITUTIONAL RIGHTS ARE VIOLATED.  I JUST DON'T SEE ACCORDING

23  TO NINTH CIRCUIT LAW THAT WE ARE THERE.

24      THE COURT:  ALL RIGHT.

25      MR. SHNEIDER, ANY RESPONSE?

1          MR. SHNEIDER:  JUST THAT IN TERMS OF ABILITY TO

2   COMMUNICATE WITH MR. WILSON, MS. MILSTEIN CORRECTLY POINTED OUT

3   I WAS ABLE TO GET A CALL TO SECURE A WAIVER OF PRESENCE.  BUT I

4   DO JUST WANT TO MAKE CLEAR THAT THAT WAS FOR A VERY SPECIFIC

5   AND LIMITED PURPOSE.  IF I WANTED TO TALK TO MR. WILSON ABOUT

6   INVESTIGATION OR REVIEW DISCOVERY OR ANYTHING LIKE THAT, I'M

7   NOT, AT LEAST AS FAR AS I'M AWARE, ABLE TO DO SO.

8          SO, ALTHOUGH IF THERE'S AN URGENT, EMERGENCY SORT OF

9   SITUATION, A CALL TO -- OR WAS ARRANGED.  I DON'T EVEN KNOW IF

10  IT CAN BE IN THE FUTURE.  ALL I KNOW IS THE ONE CALL THAT WAS

11  MADE.

12          IT'S NOT A SITUATION WHERE IT'S JUST A QUESTION OF

13  PUTTING THE RIGHT EXCLAMATION POINT AND MARKING URGENT AN

14  EMAIL.  AND I CAN TALK TO MR. WILSON.  IT'S NOT -- IT'S NOT

15  THAT.  IT'S -- THE RULE IS THAT I CAN'T TALK TO HIM.  AND THAT

16  THERE'S AN EXCEPTION MADE IF I NEED SOMETHING LIKE A WAIVER

17  SIGNED OR SOMETHING THAT'S EXTREMELY TIME SENSITIVE.  BUT I

18  JUST WANT TO MAKE CLEAR IT'S NOT AS IF I CAN COMMUNICATE WITH

19  THEM BY SENDING AN EMAIL IN THAT WAY.

20          AND I'M NOT EVEN -- I DON'T EVEN KNOW IF THAT'S -- I

21  DON'T KNOW THAT THAT'S WHAT MS. MILSTEIN WAS SAYING, BUT I JUST

22  WANT TO MAKE CLEAR, YOU KNOW, THAT I CAN'T COMMUNICATE WITH

23  HIM.

24          BEYOND THAT, I DON'T HAVE ANYTHING TO ADD TO THE

25  ARGUMENTS I'VE MADE.  IT'S A VERY TROUBLING SITUATION.  AND I

1    DON'T OBVIOUSLY FAULT THE GOVERNMENT OR THE COURT.  YOU KNOW, I

2    -- YOU'RE NOT -- NEITHER THE GOVERNMENT NOR THE COURT CREATED

3    THIS SITUATION.  BUT THE COURT DOES HAVE THE ABILITY TO

4    AMELIORATE THE SITUATION BY GRANTING TEMPORARY RELEASE, WHICH

5    IS WHAT WE'RE ASKING FOR HERE.

6              AND I DON'T HAVE ANY ADDITIONAL ARGUMENT TO MAKE ON

7    THAT.

8              THE COURT:  THANK YOU, MR. SHNEIDER.

9              WITH RESPECT -- I WILL SAY -- YOU KNOW, I THINK THAT

10   -- BECAUSE I HADN'T SAID THIS YET BECAUSE, MR. SHNEIDER, YOU

11   ATTACHED THE COMMUNICATIONS, THE EMAILS FROM THE WARDEN.

12   THAT'S THE SAME INFORMATION THAT I RECEIVED AS PART OF THE

13   COURT.

14             MY UNDERSTANDING THOUGH -- BECAUSE I DON'T THINK THIS

15   IS PART OF THE RECORD OR ATTACHED AS AN EXHIBIT.

16             AND THIS IS A QUESTION, MR. SHNEIDER.

17             MY UNDERSTANDING IS THAT YOU CAN SEND -- YOUR ABILITY

18   TO SPEAK TO YOUR CLIENT EITHER BY PHONE OR IN PERSON IS

19   EXTREMELY RESTRICTED AND ESSENTIALLY NOT HAPPENING EXCEPT IN

20   THESE URGENT SITUATIONS LIKE YOU DESCRIBED.

21             BUT ARE YOU STILL ABLE TO SEND MAIL -- PAPER MAIL TO

22    -- TO CLIENTS?

23             SO, IN OTHER WORDS, YOU MENTIONED DISCOVERY.  COULD

24   YOU SEND THE DISCOVERY?  CAN YOU STILL SEND DISCOVERY TO MR.

25   WILSON?

1          MR. SHNEIDER:  I -- I CAN.  I CAN.  I CAN STILL SEND

2     LETTERS AND PAPER DISCOVERY TO MR. WILSON.  I DON'T KNOW THAT

3     HE HAS THE ABILITY TO REVIEW ELECTRONIC DISCOVERY.  FOR

4     INSTANCE, IN THIS CASE THERE ARE VIDEOS THAT YOU WOULD NEED A

5     COMPUTER TO REVIEW.

6          I'M HONESTLY NOT SURE WHETHER HE HAS ACCESS TO A

7     COMPUTER TO DO THAT OR NOT.  I'M PRETTY CERTAIN HE DOES NOT

8     BECAUSE I THINK THE CLIENTS ARE CONFINED TO THEIR CELLS ALMOST

9     ALL DAY.

10          THE COURT:  ALL RIGHT.  THAT'S FINE --

11          MR. SHNEIDER:   BUT WE ARE ABLE TO -- I AM ABLE TO

12     SEND HIM PAPER DISCOVERY.  AND I HAVE.  AND I CAN SEND HIM

13     LETTERS.

14          SO, YES, THAT FORM OF COMMUNICATION IS OPEN.  BUT IN

15     TERMS OF ACTUALLY REVIEWING IT WITH HIM AND TALKING TO HIM

16     ABOUT IT, THAT IS -- THAT ABILITY IS STIFLED AT THE MOMENT.

17          THE COURT:  UH-HMM.

18          OKAY.  WELL, THANK YOU, BOTH, VERY MUCH.  I

19     APPRECIATE HOW COMPREHENSIVE YOUR ARGUMENTS ARE.

20          SO, MR. SHNEIDER, I THINK -- AS TO THE END COME BACK

21     TO WHERE WE BEGAN, WHICH IS, I THINK OUT OF THE GATE THE

22     CHALLENGE HERE IS THAT MR. WILSON HAS NOT COME FORWARD WITH

23     SURETIES.

24          AND I GUESS I WOULD SAY BECAUSE I DON'T WANT -- YOU

25     KNOW, I DON'T WANT A TAKE-AWAY FROM THIS TO BE THAT -- YOU

1    KNOW, THAT HAD I FOUND MS. DENNINGS A MORE VIABLE SURETY THIS

2    WOULD HAVE GONE DIFFERENTLY.

3         I DO WANT TO EMPHASIZE THAT I HAVE SOME SERIOUS

4    CONCERNS ABOUT APPEARANCE AND ABOUT SAFETY TO THE COMMUNITY.

5         AND I THINK THAT EVEN THE 20,000-DOLLAR PACKET HERE

6    IS CONCERNING.  IT RAISES IN MY MIND QUESTIONS ABOUT WHETHER OR

7    NOT WE CAN ADDRESS APPEARANCE AND SAFETY OF THE COMMUNITY.  SO,

8    IT'S NOT SIMPLY THAT I'M FINDING -- I'M REJECTING MS. DENNINGS

9    AS A SURETY HERE.  THAT'S -- I HAVE CONCERNS THERE.  BUT EVEN

10   IF WE SUBSTITUTED SOMEBODY ELSE I'D STILL BE -- WOULD REJECT

11   THE APPLICATION BASED ON $20,000 AFFIDAVIT OF SURETY

12   UNJUSTIFIED.

13        AND I THINK THE REASON I KEEP COMING TO THAT, MR.

14   SHNEIDER, IS I THINK THAT CREATES CHALLENGES IN TERMS OF THE

15   ALTERNATIVE ARGUMENTS.

16        IN MY RESEARCH THE CASE LAW SEEMS TO INDICATE --

17        AGAIN, IT ALWAYS HAS TO BE INDIVIDUALIZED IN

18   PARTICULAR.  AND IF THERE AREN'T SURETIES, THERE'S NO PLACE FOR

19   HIM TO GO.  YOU HAVE THE DANGER AND THE FLIGHT RISK ARE

20   UNADDRESSED OR UNMITIGATED.

21        YOU KNOW, I WILL SAY THAT I THINK MY CONCERNS WILL GO

22   UP SIGNIFICANTLY IF COME MIDDLE OF DECEMBER WE STILL HAVE

23   ESSENTIALLY NO COMMUNICATION.  THIS WILL SEEM I'M -- IT'S STILL

24   UNPRECEDENTED, THE DISRUPTION TO OR INTERFERENCE WITH THE RIGHT

25   TO COUNSEL.

1            AND -- I MEAN THE IMPORTANCE OF THE COMMUNICATION,.

2            MR. SHNEIDER HAS INDICATED THAT HE CAN SEND MAIL --

3     PAPER MAIL.  BUT MY UNDERSTANDING IS THAT FOLKS AT MDC ARE

4     CONFINED TO THEIR CELL, WHICH I THINK MEANS YOU CAN'T REVIEW

5     ANYTHING ELECTRONICALLY.

6            SO -- AND MANY OF THEM -- THE OTHER CHALLENGES THAT

7     ARE PRESENTED ARE -- I MEAN THEY GO STRAIGHT TO HIS

8     CONSTITUTIONAL RIGHT TO COUNSEL.

9            SO, FOR TODAY, MR. SHNEIDER, I'M GOING TO DENY THE

10    BAIL REVIEW APPLICATION.  IF IT -- IF IT'S RENEWED, MR.

11    SHNEIDER, YOU UNDERSTAND MY CONCERNS, RIGHT?  I AM CONCERNED

12    ABOUT THE PACKAGE, THE COMBINATION HERE.  AND I'M ALSO

13    CONCERNED ABOUT WHERE MR. WILSON WOULD RESIDE, SO.

14           BUT FOR PURPOSES OF TODAY I'M GOING TO DENY THE BAIL

15    REVIEW APPLICATION.

16           MR. SHNEIDER, LET ME BEGIN FIRST WITH YOU.  ANYTHING

17    ELSE YOU WANT TO PUT ON THE RECORD?

18           MR. SHNEIDER:  NOT IN TERMS OF ARGUMENT, YOUR HONOR.

19    I -- I UNDERSTAND YOUR HONOR'S POSITION.

20           I'LL JUST SAY THAT IF I AM ABLE TO, YOU KNOW, SECURE

21    ADDITIONAL SURETIES AND AN ALTERNATIVE LIVING SITUATION, THEN,

22    AT THAT POINT IN TIME I'LL FILE, YOU KNOW, ANOTHER BAIL REVIEW

23    APPLICATION IF WARRANTED ADDRESSING YOUR HONOR'S CONCERNS.

24           THE COURT:  ALL RIGHT.

25           MS. MILSTEIN, ANYTHING ELSE?

31

1          MS. MILSTEIN:  NO, YOUR HONOR.

2          THANK YOU.

3          THE COURT:  OKAY.  ALL RIGHT.

4          THANK YOU VERY MUCH.

5          WE'RE ADJOURNED.

6          (PROCEEDINGS ADJOURNED.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        C E R T I F I C A T E

2

3

           I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
4   FROM THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE
    ABOVE-ENTITLED MATTER.
5

6

    /S/ DOROTHY BABYKIN                      12/16/20
7   _____      _____

    FEDERALLY CERTIFIED TRANSCRIBER          DATED
8   DOROTHY BABYKIN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25