TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
SARA MILSTEIN (Cal. Bar No. 313370)
Assistant United States Attorney
Violent & Organized Crime Section
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-8611
     Facsimile: (213) 894-3713
     E-mail:    sara.milstein@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CR No. 20- |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT NATHAN WILSON'S BRIEF IN SUPPORT OF PRE-TRIAL RELEASE |
| v. | |
| NATHAN WILSON, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Sara Milstein, hereby files its Opposition to Defendant Nathan Wilson's Brief in Support of Pre-trial Release.

//

//

//

This Opposition is based upon the attached memorandum of points and authorities, the brief attached as Exhibit 1, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 28, 2021                    Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division


      /s/
_____
SARA MILSTEIN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

After three hearings and three orders determining that defendant Nathan Wilson ("defendant") should be detained pending trial, defendant comes again before this Court to request bond. Although defendant offers an additional surety (although a lower overall surety amount), that surety is of dubious suitability, and there are no new facts or circumstances that make defendant any less of a flight risk or danger to the community than when this Court and the District Court last examined defendant's case. Accordingly, defendant's third motion should again be denied.

**II. STATEMENT OF FACTS**

As provided in greater detail in the government's previous bail oppositions in this case, defendant set fire to a police car and admitted to doing so in a post-Miranda statement. See Ex 1 at 3-6. Defendant also set fire to his romantic partner's car, for which he is facing state charges. Id. at 4. He posted online images so threatening that the FBI assigned him a guardian and contacted him to investigate his threat level. Id. at 4-5. One image he posted to social media depicted an AR-15 rifle with the caption, "Just picked up a double 40 mag so I can kill 80 liberals at a time, as long as they are lined up. We all know how 'hard' it is to hunt with this thing after all." Id. at 4.[1] In a second social media post, defendant was wearing tactical military gear and holding a rifle. The photo caption referenced the far-right anti-government extremist

---

[1] All page references to Exhibit 1 are to the page number on each the page header, beside the docket number.

militia called the "Boogaloo Bois."  He wrote, "it's almost boogaloo time ladies and gents."

After three bail applications and four arguments, defendant now proposes a <u>lower</u> bond amount (from $20,000 to $15,000).  Def.'s Br. at 3 (ECF No. 87.)  He also proposes that he resides with his sister outside of the District, although the government is concerned about this placement because her criminal history records show she has been previously arrested for drug-trafficking.  Milstein Decl. ¶ 2.[2]

Defendant asserts that these conditions, along with location monitoring, would lessen the danger he poses to the community after committing repeated acts of violence and threatened violence.  He also asserts that the proposed bond package mitigates his risk of nonappearance even though he has already shown his willingness to hide from law enforcement and an inclination to travel to Mexico.

For the reasons set forth in Exhibit 1 and below, defendant should remain in custody pending trial.

**III. ARGUMENT**

On each the four occasions on which this Court and Judge Olguin have examined the factors under 18 U.S.C. § 3142, the Courts have consistently decided that defendant is both a risk of nonappearance and a danger to the community.  Defendant's newly proposed bond terms do not fully address either concern.

    **A.   Standard of Review**

Under 18 U.S.C. 1342(g), four factors are considered in determining whether there are conditions of release that will

---

[2] It is not clear whether the proposed surety's arrest resulted in a conviction, disposition, or dismissal.  I am awaiting receipt of a police report about this incident.

2

reasonably assure the appearance of the person as required and the safety of any other person and the community. The government submits that each factor, both independently and jointly, support detention because of defendant's danger to the community and -- under a mostly unsecured bond offered in part by someone with a drug-trafficking arrest in her history, when defendant faces a seven-year mandatory minimum sentence -- his risk of flight.

### 1. The Nature and Seriousness of the Offense Charged

A Grand Jury indicted defendant for setting fire to and destroying a police car, endangering people and community buildings around him in the process. Arson is an extremely serious criminal violation, so serious, in fact, that Congress has established a seven-year statutory mandatory minimum for it. See 18 U.S.C. §§ 844(f)(1), (2).

### 2. The Nature and Seriousness of the Danger to Any Person or the Community That Would Be Posed by the Defendant's Release; Defendant's Character and Conduct

Under these prongs of the analysis, the question is whether a "condition or combination of conditions [that] will reasonably assure . . . the safety of any other person and the community." Even with an extensive list of stringent release conditions available, courts have frequently held that no such combination of conditions, would reasonably assure the safety of the community. See United States v. Hir, 517 F.3d 1081, 1091-92 (9th Cir. 2008).

Here, defendant presents a significant danger to the community. He has already put life and limb in jeopardy by burning a police car. And defendant's arson is even more serious and dangerous because it appears to be a pattern: he burned his romantic partner's car just weeks after burning the police car. Ex 1 at 4. He vandalized a dry-

3

cleaner and a guitar shop. Ex 1 at 3. And defendant has a pattern of posting photographs of himself on social media with threatening messages. These acts not only prove defendant's danger, but also his character. Through his actions and his words, defendant has repeatedly shown this Court that he poses a grave danger to both his romantic partner, whose car he has already burned, and to the community, whose safety he has repeatedly threatened.

If released, defendant purports that he plans to live with his sister in Northern California. But his sister has been arrested for drug-trafficking, and an unstable environment would leave defendant open to committing new crimes, issuing new threats, accessing additional firearms, and endangering the community again. Even if defendant's sister made her best efforts to control defendant, she would not have complete control over him or his movements. Indeed, thus far, this familial connection has not prevented him from violating the law.

The existence of sureties does nothing to secure the safety of the community. As explained in United States v. Rodriguez, a "$100,000 security bond, cosigned by two financially responsible persons, strict pretrial service agency supervision and restriction of travel," and the "existence of four cosigners and $10,000 cash may assure the appearance of [Defendant] at trial but will not secure the safety of the community." 950 F.2d 85, 89 (2d Cir. 1991).

Nor does the existence of sureties truly mitigate defendant's risk of nonappearance. Defendant has already evinced a concrete desire and ability to evade law enforcement, having secreted himself in a mattress box spring when police went to arrest him. Ex. 1 at 5. And he showed that he has the inclination to move to Mexico, having

4

said on a jail call that he wants his child to be born there, and that he would also be present for the birth. Id. at 11. In light of the seven-year statutory mandatory minimum sentence that defendant faces if convicted at trial, defendant's incentive to flee is all the more compelling now.

### 3. Weight of the Evidence Against the Defendant

The government maintains that the evidence presented thus far in this Opposition (and previous oppositions) sufficiently establish the strength of the evidence of defendant's guilt and danger. Defendant is captured on video burning the police car and in photographs vandalizing local shops the same day, and he admitted to burning the police car, and conceded he was "there with intent" and wanted to "participate in what was going on." Ex. 1 at 5-6. Defendant's actions -- done with willfulness and intentionality -- show him to be a genuine flight risk and risk of danger that cannot be mitigated by the proposed bond terms.

**IV. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court defendant's third bail application and order defendant remain detained as a danger to the community and a flight risk.