CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
HOWARD SHNEIDER (Bar No. 309492)
(E-Mail: howard_shneider@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-1456
Facsimile: (213) 894-0081

Attorneys for Defendant
NATHAN WILSON

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 20-516-FMO |
| Plaintiff, | **REPLY IN SUPPORT OF MOTION TO DISMISS OR IN THE ALTERNATIVE COMPEL DISCOVERY** |
| v. | |
| NATHAN WILSON, | Hearing Date: December 3, 2021 |
| Defendant. | Hearing Time: 2:00 p.m. |

Nathan Wilson, through his counsel, files his reply in support of his motion to dismiss or, in the alternative, to compel discovery (ECF No. 130).

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: November 19, 2021      By   */s/ Howard Shneider*
                                   Howard Shneider
                                   Deputy Federal Public Defender
                                   Attorney for Nathan Wilson

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT .........................................................................................................2

      A.   Wilson has established that the government prosecuted him for
           a discriminatory purpose: because of his imputed anti-
           government views. ......................................................................................2

           1.   The government targeted Wilson due to an impermissible
                arbitrary classification of individuals associated with the
                protests who the government thought held anti-
                government views. ............................................................................2

           2.   The government's discriminatory purpose is evident from
                the public record, and to the extent there is doubt about the
                existence of a policy, the proper remedy is to order the
                requested discovery. .........................................................................4

           3.   The reasons for the FBI initiating an investigation into
                a criminal threats case against Beasley does not justify
                the USAO's charging decision in an arson case
                against Wilson. .................................................................................6

      B.   Wilson has established a discriminatory effect because a large
           swath of arson cases in the district that could have been brought
           federally were not. .....................................................................................7

      C.   If the Court denies the motion to dismiss, Wilson is entitled to
           discovery and an evidentiary hearing. .......................................................9

III.  CONCLUSION ....................................................................................................12

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Federal Cases**

*United States v. Armstrong,*
   517 U.S. 456 (1996)..................................................................................................7, 10

*United States v. Bourgeois,*
   964 F.2d 935 (9th Cir. 1992) ...................................................................................... 10

*United States v. Falk,*
   479 F.2d 616 (7th Cir. 1973) (en banc) .......................................................................3

*United States v. Graham,*
   146 F.3d 6 (1st Cir. 1998)........................................................................................... 10

*Irons v. Sisto,*
   No. CIV S-05-0912, 2007 WL 4531560 (E.D. Cal. Dec. 18, 2007) ........................ 11

*Marilley v. McCamman,*
   No. C 11-02418, 2012 WL 4120633 (N.D. Cal. Sept. 19, 2012)............................. 10

*United States v. Oakes,*
   11 F.3d 897 (9th Cir. 1993) .........................................................................................3

*Oyler v. Boles,*
   368 U.S. 448 (1962)......................................................................................................3

*United States v. Steele,*
   461 F.2d 1148 (9th Cir. 1972) ..................................................................................3, 8

*In re Subpoena Duces Tecum Served on Office of the Comptroller,*
   145 F.3d 1422 (D.C. Cir. 1998)................................................................................. 11

*Thomas v. Cate,*
   715 F. Supp. 2d 1012 (E.D. Cal. 2010) .................................................................... 11

*Vietnam Veterans of Am. v. Central Intelligence Agency,*
   No. 09-CV-0037, 2011 WL 4635139 (N.D. Cal. Oct. 5, 2011).............................. 11

*Wayte v. United States,*
   470 U.S. 598 (1985)......................................................................................................3

*United States v. Wood,*
   No. 20-56 MN, 2021 WL 3048448 (D. Del. July 20, 2021) .......................................5

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Federal Statutes**

18 U.S.C. § 231(a)(3)................................................................................................5

**Other Authorities**

Aruna Viswanatha & Sadie Gurman, *Barr Tells Prosecutors to Consider Charging Violent Protesters With Sedition*, The Wall Street Journal (Sept. 17, 2020).........................................................................................4

Brian Rokos, *Convicted arsonist now accused of torching Orange County business, burglarizing fire stations*, https://bit.ly/OC-arson; ......................9

Christopher Damien, *Brandon McGlover pleads guilty to arson charges in Cranston Fire case, gets 12 years in prison*, https://bit.ly/Cranson-fire;..................9

Jonah Valdez, *Arson suspect arrested in separate incident a day after San Gabriel Mission fire*.............................................................................9

San Gabriel Valley Tribune (July 22, 2020), https://bit.ly/Mission-fire.........................9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES
### I. INTRODUCTION

In its opposition, the government argues that: Wilson failed to show that the Department of Justice (DOJ) had a policy of prosecuting individuals associated with the protests; even if DOJ did have such a policy, Wilson fails to show it was implemented and carried out by the U.S. Attorney's Office in our district (USAO); the proper comparator group for analyzing discriminatory effect is only arsons that occurred during a two-day period in May 2020; there is insufficient information provided about the thousands of arsons cited in the motion for them to qualify as the proper comparator group; the government began its investigation for non-protest-related reasons; and the government should be shielded from producing discovery by the deliberative process privilege. Opp'n. Upon closer examination, each of the government's points fails.

The public statements of the former President and the former Attorney General—the nation's top prosecutor—taken collectively demonstrate an intent to target individuals associated with the protests who the government thought held anti-government views, regardless of their actual views. Moreover, the public record shows that former Attorney General Barr did in fact direct each local USAO to prosecute accordingly. To the extent the government argues there was no formal or written policy in place or no showing that the USAO implemented a formal or written policy in charging this case, that position begs a question that can only be answered if the Court orders the production of the requested discovery.

As for the proper comparator group, the government conveniently does not engage with the reality that the four cases related to conduct in May 2020 were all directly tied to the protests. The defendants in those cases cannot be the proper comparator group, because they all share the same characteristic of being targeted for imputed anti-government views. Instead, the proper comparator group must be all arsons that occurred in the district that could have been charged federally but were not. That has always been the proper framework for equal protections claims—examining

1  similarly situated persons, one group of which was treated in one fashion while the

2  other in another fashion. Wilson does not need to show the nature and specific details

3  of each state arson case; only that the government could have, but failed to, bring

4  charges in the many other arsons in the district over which they would have federal

5  jurisdiction. The government's claim that it had independent reasons for investigating

6  Beasley may have supported an argument for charging Beasley with criminal threats,

7  but it does not explain why the government chose to charge Beasley and Wilson

8  federally for arson.

9  　　The government's invocation of the deliberative process privilege similarly does

10  not help their argument. The privilege does not shield the government from discovery

11  when constitutional concerns of this magnitude are raised and proven.

12  　　Wilson has come forward with sufficient evidence to show both discriminatory

13  purpose and discriminatory effect. Accordingly, the Court should dismiss the

14  indictment. In the alternative, the Court should order production of the requested

15  discovery to alleviate any doubts about why the government charged Wilson here.

16  **II. ARGUMENT**

17  **A.**　**Wilson has established that the government prosecuted him for a**

18  　　　**discriminatory purpose: because of his imputed anti-government views.**

19  　　The government makes several arguments regarding discriminatory purpose, but

20  the arguments either miss the point or fail to fully engage with the facts presented.

21  Wilson takes each point in turn.

22  　　　**1.**　　**The government targeted Wilson due to an impermissible**

23  　　　　　**arbitrary classification of individuals associated with the protests**

24  　　　　　**who the government thought held anti-government views.**

25  　　The government contends that Wilson and others who were targeted for being at

26  the protests do not fall into a constitutionally-protected "arbitrary classification." Opp'n

27  at 9. Initially, Wilson seeks to clarify that the arbitrary classification here is individuals

28  associated with the protests who the government thought held anti-government views,

2

1    regardless of what actual views they held. Former President Trump and former

2    Attorney General Barr made sweeping public statements in which they conflated

3    protesters, Black Lives Matter, Antifa, "radicals," and Bolsheviks, and grouped such

4    people together under the umbrella of those who had "anti-government" views. Trump

5    and Barr imputed anti-government views to anyone associated with the protests and

6    anyone suspected of having committed crimes during the protests. Thus, it is

7    immaterial whether Wilson went to the SMPD vehicle straight from a Black Lives

8    Matter protest with a poster still in hand or was involved with the protest or movement

9    at all. What matters is that President Trump and Attorney General Barr imputed anti-

10   government views to people like Wilson, they made clear declarations of an intent to

11   harshly prosecute such individuals, and the USAO in turn did prosecute them.

12         The Supreme Court in *Oyler* did not define the term "other arbitrary

13   classification," and its progeny have not specified the outer limits of an arbitrary

14   classification. *Oyler v. Boles*, 368 U.S. 448, 456 (1962). Whatever those outer limits

15   may be, however, the group of protesters targeted by the government here surely fall

16   within the category of an arbitrary classification.

17         "[P]roof of discrimination based on . . . personal beliefs" is sufficient to trigger a

18   court's review of prosecutorial charging decisions. *United States v. Oakes*, 11 F.3d 897,

19   898-99 (9th Cir. 1993). Indeed, government action violates equal protection where it is

20   "deliberately based upon an unjustifiable standard such as race, religion, or other

21   arbitrary classification," *Oyler*, 368 U.S. at 456, which includes "the exercise of

22   protected statutory and constitutional rights." *Wayte v. United States*, 470 U.S. 598, 608

23   (1985). The government is similarly prohibited from punishing individuals more

24   harshly simply for being "a member of a group unpopular with the government."

25   *United States v. Falk*, 479 F.2d 616, 620 (7th Cir. 1973) (en banc) (remanding for

26   hearing on selective prosecution for allegedly targeting defendant as a member of

27   Chicago Area Draft Resisters); *see also United States v. Steele*, 461 F.2d 1148, 1152

28   (9th Cir. 1972) ("An enforcement procedure that focuses upon the vocal offender is

3

1    inherently suspect, since it is vulnerable to the charge that those chosen for prosecution

2    are being punished for their expression of ideas, a constitutionally protected right.").

3    Thus, although there is not a specific case holding that the protesters here—to whom

4    the government has imputed anti-government views—constitute an arbitrary

5    classification, extrapolating from equal protection case law leads to the conclusion that

6    the protesters do constitute an arbitrary classification entitled to constitutional

7    protection from selective prosecution.

8              **2.      The government's discriminatory purpose is evident from the**

9                    **public record, and to the extent there is doubt about the existence**

10                   **of a policy, the proper remedy is to order the requested discovery.**

11             The government argues that Wilson has failed to show there was a DOJ policy to

12   target protesters for prosecution. Opp'n at 9-12. As described in the motion, in addition

13   to many public statements by Trump and Barr about how the protestors must be

14   targeted and harshly punished, reports show that Barr had a conference call with U.S.

15   Attorneys across the country to specifically order them to bring charges against

16   protestors. Mot. at 10; *see* Aruna Viswanatha & Sadie Gurman, *Barr Tells Prosecutors*

17   *to Consider Charging Violent Protesters With Sedition*, The Wall Street Journal (Sept.

18   17, 2020), https://bit.ly/Barr-Protesters. The public statements by the president and the

19   nation's top prosecutor, coupled with Barr's conference call with the nation's federal

20   prosecutors, establish there was in fact a top-down policy from DOJ that Barr ordered

21   each U.S. Attorney's office to follow.

22             To the extent the government argues there was no *written* policy, that begs the

23   question of whether there was an internal written policy that is not available in the

24   public domain. Surely the DOJ, like any other organization, has various internal written

25   policies that are not readily disclosed to the public. If everyone asserting a selective

26   prosecution claim were required to obtain such internal, nonpublic policies, in order to

27   make out a claim, then it would be impossible to ever prevail. Thus, to the extent the

28

4

1  government argues a lack of a formal written policy in the record, the Court should

2  order the government to disclose the requested discovery.

3      The government similarly argues that assuming there was a DOJ policy, there is

4  no evidence that the USAO in our district implemented such a policy. Once again,

5  however, this position begs the question of what exists internally within the USAO that

6  is not in the public domain. It is Wilson's position that Trump and Barr's public

7  statements and the conference call with Barr and prosecutors nationwide in

8  combination with the USAO's charging decision in the protests cases in our district is

9  sufficient to establish discriminatory purpose. But to the extent the government claims

10  there also must be a formalized written policy from the USAO in our district, the Court

11  should again order the requested discovery to find out what exactly dictated the

12  charging decision here.

13      The government cites a district court case from Delaware, *United States v. Wood*,

14  No. 20-56 MN, 2021 WL 3048448 (D. Del. July 20, 2021), in support of its argument.

15  *Wood*, however, dealt with a selective prosecution argument in the context of a charge

16  for Civil Disorder in violation of 18 U.S.C. § 231(a)(3). Wood argued that the

17  government engaged in selective prosecution because of the way it handled Wood's

18  protest-related case compared to how the government handled the January 6 U.S.

19  Capitol riot cases. Addressing different charges and a different comparator group than

20  those at issue here, the district judge in *Wood* glossed over the fact that the Attorney

21  General of the United States made many public statements about targeting protesters

22  for prosecution and held a nationwide conference call with each district's top

23  prosecutor. Barr's statements and actions can hardly be classified as "tangentially

24  related to" Wilson's prosecution here. *Wood*, 2021 WL 3048448, at *3. Because the

25  court in *Wood* did not meaningfully engage with the assertion of a DOJ policy

26  implemented by the USAO, this Court should lend the decision no weight.

27  ///

28  ///

**3.      The reasons for the FBI initiating an investigation into a criminal threats case against Beasley does not justify the USAO's charging decision in an arson case against Wilson.**

That the FBI initiated its investigation into Beasley due to alleged threats he made online about killing police does not explain why the government brought arson charges against Wilson here. The government attempts to justify its prosecution by painting Wilson and Beasley as dangerous individuals who were charged with arson because of their specific characteristics and not because they were associated with the protests. Closer examination of what happened in this case, however, contradicts the government's conclusion.

The government explains that the investigation started because of threats Beasley made online to kill police. That, in turn, led the FBI to review Beasley's other social media activity, and led to the FBI finding a Facebook post of the video that is the basis for the arson charge here. If the government went on to charge Beasley with criminal threats, its argument would carry some persuasive weight. In that scenario, it would mean the reasons for the government's investigation of Beasley led directly to a charge for the conduct that sparked the investigation. Instead, the government chose not to file charges related to the threat to police, and instead charged Beasley and Wilson with arson.

If the government's real concern was the threats to police, it would have only charged Beasley, and would not have charged Wilson at all. The fact that the government instead chose to prosecute both Wilson and Beasley for arson is indicative of the reality that the USAO was following the policies of Trump and Barr to come down on protesters with federal charges. Wilson and Beasley were charged for their protest-related conduct—not for threats made beforehand to police, not for Wilson's prior Facebook post from when he lived in Washington state, and not for any other conduct aside from the conduct at the protests. Accordingly, although the government wishes to characterize their prosecution here as a thoughtful decision tied to the

6

1   individual characteristics of each defendant, the reality is that Wilson would not have

2   been charged but for his being at the protests. The same goes for the other protest cases

3   in the district that arose from conduct during the same two-day period in May 2020.

4          If, however, the government stands firm in its position that the protests had

5   nothing to do with its charging decision here, then there should be no issue with the

6   government producing the requested discovery. That discovery, in turn, should

7   vindicate the government, and the Court should order the government to produce it.

8   **B.**     **Wilson has established a discriminatory effect because a large swath of**

9             **arson cases in the district that could have been brought federally were**

10            **not.**

11         The government argues that the proper comparator group is the other protest

12  cases rather than the many arson cases that occur every year in the district. The

13  government goes on to argue that Wilson has not put forward sufficient information

14  about the other arsons in the district in order for them to be considered the relevant

15  comparator group. Both contentions are misplaced.

16         As the Supreme Court explained in *Armstrong*, evidence that "similarly situated

17  persons . . . were prosecuted by the State of California and were known to federal law

18  enforcement officers, but were not prosecuted in federal court" would tend to support a

19  selective prosecution claim. *United States v. Armstrong*, 517 U.S. 456, 470 (1996).

20  That is precisely the data that Wilson has put forward here. The government does not

21  dispute that the federal government would have jurisdiction over many of the

22  documented arson cases that occur in the district every year. With federal jurisdiction

23  established, those other arson cases are the only comparator group that makes sense.

24  Wilson does not have to show that the other arson cases were of a certain quality or

25  severity, or that the defendants in those cases presented a certain kind of danger.

26  Nowhere does the case law delineate such specific requirements for a comparator

27  group.

28

7

1    The Ninth Circuit's analysis in *Steele*, described in the motion, is instructive

2    regarding what a proper comparator group should look like. Mot. at 18-19. In *Steele*,

3    the defendant was charged with not answering the census, and he claimed that he was

4    charged because he expressed anti-government views. The comparator group in *Steel*

5    was the other people who did not answer the census (i.e., who committed the same

6    criminal conduct), but who were not charged with failing to answer the census. *United*

7    *States v. Steele*, 461 F.2d 1148, 1151 (9th Cir. 1972). The government argues that

8    *Steele* is inapposite because "the defendant chose a proper control group that isolated

9    the factor allegedly subject to impermissible discrimination." Opp'n at 17 n.5. But

10   Wilson has done the same here. The isolated factor that separates his prosecution from

11   that of other arson cases in the district is that it arose from the protests and he was

12   charged as a result of his perceived anti-government views. Thus, the proper

13   comparator group is in fact all other arsons in the district that could have been, but were

14   not, charged federally.

15       Regarding the government's argument that the proper comparator group is the

16   four protest cases that were brought federally, the argument misunderstands the purpose

17   of a comparator group. The comparator group is meant to be the pool of all possible

18   individuals who could be prosecuted for the crime at issue. To narrow the group to only

19   those arsons that occurred at protests makes little sense. Large-scale protests happen

20   infrequently, and are not in and of themselves criminal. What does happen frequently,

21   as shown by data, and what does constitute criminal conduct, are arsons in the district.

22   Accordingly, that is the proper comparator group.

23       The government glosses over the significance of federal prosecutions for *stand-*

24   *alone* arson charges, and the complete lack of such charges federally in this district for

25   over a decade. Part of the reason the four protest cases brought in 2020 are so

26   significant and show discriminatory effect when compared to other arsons is because

27   the government has almost never brought arson charges unless the arson charge is

28   connected to much more serious conduct. The government's feigned ignorance that,

8

1    "[t]iming appears to be their only commonality" among the four protest cases rings

2    hollow. Opp'n at 14. The commonality is that all four cases stem from conduct that

3    occurred over the same two-day span of May 30-31, 2020—when large-scale protests

4    took place—and were the target of Barr and Trump's policy.

5         The government argues that we lack sufficient information about the many other

6    arson cases in the district to know whether there were reasons why the USAO may

7    have declined prosecution in those other cases. Again, it is not Wilson's burden to

8    come forward with such detailed information of the comparator group. But, to the

9    extent the government argues that the USAO would only charge the most serious arson

10   cases, that assertion lacks merit given other well-publicized arson cases that have

11   occurred in recent times that could have been, but were not, brought federally. As cited

12   in footnote 3 of the motion, the USAO did not federally prosecute an arson that

13   involved more than $5 million in damages, an arson where a victim died, or an arson

14   that burned a 215-year-old mission. *See* Brian Rokos, *Convicted arsonist now accused*

15   *of torching Orange County business, burglarizing fire stations*, https://bit.ly/OC-arson;

16   Christopher Damien, *Brandon McGlover pleads guilty to arson charges in Cranston*

17   *Fire case, gets 12 years in prison*, https://bit.ly/Cranson-fire; Jonah Valdez, *Arson*

18   *suspect arrested in separate incident a day after San Gabriel Mission fire*, San Gabriel

19   Valley Tribune (July 22, 2020), https://bit.ly/Mission-fire.

20        Wilson has put forward the proper comparator group, and the government has

21   failed to justify its prosecution of stand-alone arson cases tied to the protests when it

22   has not brought such stand-alone arson cases in over a decade. As a result, Wilson has

23   sufficiently proven discriminatory purpose and discriminatory effect, and the Court

24   should dismiss the indictment.

25   **C.    If the Court denies the motion to dismiss, Wilson is entitled to**

26           **discovery and an evidentiary hearing.**

27        Based on the data provided and the arguments above, Wilson has put forward

28   sufficient evidence to warrant dismissal. This is so particularly in light of the

1   government's failure to cite a single other case in over a decade in which it has pursued

2   a stand-alone arson charge unrelated to the George Floyd protests. But, in the

3   alternative, Wilson seeks discovery and an evidentiary hearing in order to obtain and

4   present additional evidence in support of his motion.

5          To be entitled to an *evidentiary hearing*, Wilson must present a prima facie case

6   establishing both elements of a selective prosecution claim: discriminatory effect and

7   discriminatory purpose. *See United States v. Graham*, 146 F.3d 6, 9 (1st Cir. 1998)

8   (defendant is entitled to an evidentiary hearing if he "alleges facts that tend to show that

9   [he] has been selectively prosecuted and that raise a reasonable doubt about the

10  propriety of the government's purpose," . . . unless the government 'puts forward

11  adequate countervailing reasons to refute the charge and . . . the court is persuaded that

12  the hearing will not be fruitful.'") (quoting *United States v. Goldberg*, 105 F.3d 770,

13  776 (1st Cir. 1997)).

14         But a defendant does not have to establish a prima facie case in order to obtain

15  *discovery*. Instead, he need only come forward with "some evidence" tending to show

16  the existence of the essential elements of the defense. *Armstrong*, 517 U.S. at 468. To

17  meet that burden, "a defendant must present specific facts, not mere allegations, which

18  establish a colorable basis for the existence of both discriminatory application of a law

19  and discriminatory intent on the part of government actors." *United States v. Bourgeois*,

20  964 F.2d 935, 939 (9th Cir. 1992). The evidence Wilson has already presented

21  establishes that he is that "rare defendant who presents a sufficiently strong case of

22  selective prosecution to merit discovery of government documents." *Id.*

23         The government cannot be shielded from producing discovery by the deliberative

24  process privilege. Opp'n at 18-19. Courts undertake a balancing test to determine

25  whether the deliberative process privilege must give way to other, more pressing rights.

26  In particular, courts consider whether the litigated issue involved allegations of

27  government misconduct. *See Marilley v. McCamman*, No. C 11-02418, 2012 WL

28  4120633, *6-7 (N.D. Cal. Sept. 19, 2012) (plaintiff's need for administrative agency's

1   documents outweighed deliberative process privilege claimed by agency); *Vietnam*
2   *Veterans of Am. v. Central Intelligence Agency*, No. 09-CV-0037, 2011 WL 4635139,
3   *11-12 (N.D. Cal. Oct. 5, 2011) (plaintiffs "demonstrated substantial need sufficient to
4   overcome the deliberative process privilege for some of the documents" withheld by
5   administrative agency regarding exposure of VA patients to chemical/biological
6   weapons); *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1024 (E.D. Cal. 2010) (discussing
7   applicability of deliberative process privilege to decisions of administrative office
8   regarding review of parole board decisions); *Irons v. Sisto*, No. CIV S-05-0912, 2007
9   WL 4531560, *3-5 (E.D. Cal. Dec. 18, 2007) (deliberative process privilege did not
10  protect all documents sought from administrative agency re denial of parole); *In re*
11  *Subpoena Duces Tecum Served on Office of the Comptroller*, 145 F.3d 1422, 1424
12  (D.C. Cir. 1998) (deliberative process privilege did not protect administrative agencies
13  from disclosing materials requested by bankruptcy trustee). Here, Wilson's
14  constitutional right to discovery in support of his selective prosecution claim outweighs
15  the protections of the deliberative process privilege. The privilege does not protect the
16  government here.
17  ///
18  ///
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

11

1

**III. CONCLUSION**

2       Wilson has put forward sufficient evidence of DOJ directives implemented by

3 the USAO and a proper comparator group of other arson cases in the district to

4 establish a basis for selective prosecution. While the government frames the issue as a

5 lack of a government policy and an improper comparator group, the information in the

6 public record shows Trump and Barr had a policy to target protestors, and that the

7 reason Wilson was charged—while thousands of other arson cases went uncharged

8 federally—was because of his imputed anti-government views. As a result, the

9 government engaged in selective prosecution, and Wilson respectfully requests that the

10 Court dismiss the indictment. In the alternative, he asks the Court to grant his request

11 for discovery and an evidentiary hearing.

12

13

                                    Respectfully submitted,

14

                                    CUAUHTEMOC ORTEGA

15                                     Federal Public Defender

16

17 DATED:  November 19, 2021       By  */s/ Howard Shneider*

18                                     Howard Shneider
                                    Deputy Federal Public Defender

19                                     Attorney for Nathan Wilson

20

21

22

23

24

25

26

27

28

12