CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
HOWARD SHNEIDER (Bar No. 309492)
(E-Mail: howard_shneider@fd.org)
GABRIELA RIVERA (Bar No. 283633)
(E-Mail: gabriela_rivera@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-1456
Facsimile: (213) 894-0081

Attorneys for Defendant
NATHAN WILSON

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. CR 20-516-FMO-1 |
|---|---|
| Plaintiff, | **EX PARTE APPLICATION TO MODIFY BOND CONDITIONS** |
| v. | |
| NATHAN WILSON, | |
| Defendant. | |

Nathan Wilson, through his counsel, seeks an order of the Court modifying the conditions of his bond to allow him to move residences. He requests that he be permitted to reside with his partner, Aundrella Dennings, in Huntington Beach. Alternatively, he requests that he be permitted to reside with his sister, Nicole Wilson, in Red Bluff, California. This application is supported by the attached declaration of counsel.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: March 24, 2022      By  */s/ Howard Shneider*
                              Howard Shneider
                              Gabriela Rivera
                              Deputy Federal Public Defenders
                              Attorney for Nathan Wilson

**DECLARATION OF HOWARD SHNEIDER**

I, Howard Shneider, hereby state and declare as follows:

1. I am a Deputy Federal Public Defender in the Central District of California appointed to represent Nathan Wilson in this case.

2. On December 20, 2021, the Court granted bond with various conditions. Dkt. 163. On December 28, 2021, the Court modified the bond conditions by substituting $2,000 cash for the $2,000 affidavit of surety that was to be signed by Marcus Casperson. Dkt. 160. On December 30, 2021, Mr. Wilson was released to Pretrial Services and was fitted with a location monitoring device. Dkt. 184.

**A. Mr. Wilson has proven himself capable of following the conditions of pretrial release and should be permitted to move residences.**

3. Since his release, Mr. Wilson has been residing with Brianna Siegel and Angel Aguirre in Lemon Grove, California, in San Diego County. As discussed at the last bail review hearing when the Court granted bond, Ms. Siegel and Mr. Aguirre were only willing to allow Mr. Wilson to live with them for a period of months. Mr. Wilson has now lived with them for approximately three months. Ms. Siegel and Mr. Aguirre have a seven-year-old son and live in a small duplex. Although they have been happy to house Mr. Wilson for a time, given the combination of the small living space and three adults and a child living together, Ms. Siegel and Mr. Aguirre are at a point where they wish Mr. Wilson to move out.

4. With that in mind, Mr. Wilson requests that the Court grant a bond modification to allow him to reside with his partner Aundrella Dennings, their ten-month-old son, and Ms. Dennings' three other children in Huntington Beach, California. Alternatively, Mr. Wilson requests that he be permitted to reside with his sister, Nicole Wilson, and her two children, in her apartment in Red Bluff, California.

5. Since the Court granted bond at the end of last year, Mr. Wilson has been in compliance with the conditions of release and has done well. The government's previously-stated concerns that Mr. Wilson would abscond to Mexico have not come to

pass, despite the fact that Mr. Wilson is in San Diego County close to the border. The government's prediction that Mr. Wilson would pose a danger to the community has also not come to fruition. To the contrary, Mr. Wilson has spent the majority of his time inside, under home detention, allowed to leave the residence only if Pretrial pre-approves a request to leave the house. Three months have gone by without any issues. Mr. Wilson has proven himself capable of following his conditions of release, which supports his request to move residences.

6. Also since his release, the government filed a superseding indictment that reduced the charge against Mr. Wilson to make it solely a charge of attempt. Dkt. 185. The attempt crime in the superseding indictment also no longer carries an additional two-year enhancement for creating a substantial risk of injury. *Compare* Dkt. 11 (initial indictment, which carried a five-year mandatory minimum penalty for the underlying crime and an additional two-year mandatory minimum due to the enhancement for creating a substantial risk of injury) *with* Dkt. 185 (charging an attempt crime that carries a total five-year mandatory minimum and removing the enhancement for creating a substantial risk of injury). The fact the government has reduced the charge and the associated mandatory minimum means Mr. Wilson is no longer facing as harsh a punishment as he was when the Court granted bond at the end of last year. It also means Mr. Wilson's alleged conduct is less serious than previously portrayed by the government. The reduced charge and lower possible penalties further support his request to change residences.

**B. Pretrial and the government object to the proposed changes in residence.**

7. I communicated with Pretrial Services Officer Irmayra Casas-Mora regarding Mr. Wilson's request to change residences. Officer Casas-Mora indicated that Pretrial objects to Mr. Wilson living with Ms. Dennings. Officer Casas-Mora also indicated Pretrial objects to Mr. Wilson living with Nicole Wilson for the following reasons: Ms. Wilson is currently not employed and she is looking into potentially

moving to another location and is unaware how long it will be until she moves. Additionally, after speaking with the Eastern District the defendant would be placed on RF location monitoring which would not provide us with the exact location the defendant is located at all times.

8. I also communicated with Assistant United States Attorneys Sara Milstein and Jeremiah Levine regarding the request to change residences. The government objects to both proposed residences.

9. Regarding Ms. Dennings, the government stated its position as follows: The government opposes defendant living with Ms. Dennings because their relationship is too volatile to lead to a stable pretrial release living situation. Ms. Dennings has accused defendant of acting violently, calling 911 to report that he burned her car after an argument. This is an unsafe and inappropriate living situation for Ms. Dennings, her young children, and defendant. Ms. Dennings' residence is also inappropriate because she has helped defendant evade law enforcement. On October 9, 2020, when law enforcement went to execute a search warrant at the residence that Ms. Dennings and Mr. Wilson shared, Ms. Dennings lied and told law enforcement that Wilson was not at home. Then she asked officers to wait outside for a few moments before letting them search inside. After a thorough search, officers found defendant hiding in the box spring of the bed he shared with Ms. Dennings. Specifically, it appeared as if the mattress had been lifted up, that Wilson had fit himself inside, and that a sheet had been pulled tightly on top of him. Then, someone had replaced the mattress on top of Wilson and the sheet. Ms. Dennings was the only other adult at home at the time, and the government believes Ms. Dennings helped Mr. Wilson hide from authorities while lying to them about his whereabouts. The government is also concerned about Ms. Dennings' ability to provide the type of guidance and structure for defendant while she is caring for four young children.

10. Regarding Nicole Wilson, the government stated its position as follows: The government concurs with the determination of Pretrial and objects to defendant

Wilson's proposal to live with Ms. Wilson. As Pretrial notes, RF monitoring will not allow Pretrial to know defendant's exact location, which is problematic given Mr. Wilson's history of flight. Additionally, as noted by Pretrial, Ms. Wilson does not offer to defendant Wilson a stable living environment. Moreover, Ms. Wilson has a previous arrest for drug-trafficking. This arrest did not result in a conviction, but, when combined with all of the other factors highlighted by Pretrial, the government does not believe that Ms. Wilson can offer to the Court or the community the requisite measure of stability and security to ensure safety or Mr. Wilson's appearance.

**C.  Despite the concerns noted by Pretrial and the government, either proposed residence would provide a stable and secure home for Mr. Wilson and would allow him continued success on release.**

11. Mr. Wilson understands the Court has previously agreed with the government that living with Ms. Dennings would create the potential for failure. But almost a year and a half has passed since Mr. Wilson's arrest in October 2020, and the Court's concerns about residing with Ms. Dennings should be lessened at this point. Mr. Wilson is in daily contact by phone with Ms. Dennings. He does what he can to be a father to Ms. Dennings' three older children by helping them with homework over the phone and always checking in to see how they are doing. There hasn't been anything volatile about Mr. Wilson and Ms. Dennings' relationship over the past year and a half. To the contrary, their relationship has been peaceful, and they have been supportive of each other.

12. Of great importance, Mr. Wilson is a father himself now; his son with Ms. Dennings is 10 months old. Mr. Wilson wants nothing more than to be there for his son in every way possible, including living with him. If Mr. Wilson is permitted to live with Ms. Dennings, he can finally be the type of father he wants to be. The presence of his 10-month-old son will go a long way toward ensuring Mr. Wilson continues to comply with the conditions of release. He should be allowed to live with his son for the first time and to be the best father possible.

13. In addition, the notion that Ms. Dennings would help Mr. Wilson abscond is not grounded in reality. If Ms. Dennings were going to help Mr. Wilson abscond, she would have done so already. Mr. Wilson lives in San Diego County; there would be no better opportunity than now to abscond given his proximity to the border. Of course, he has not absconded, and there is no indication that he would do so if he were permitted to live with Ms. Dennings. Living with Ms. Dennings would provide a safe and secure residence, and the Court should permit the requested move.

14. Regarding the alternative proposed residence of Nicole Wilson, the government and Pretrial point out that Mr. Wilson could only be tracked by RF monitoring. But at this point, having been out for three months without issue, the concerns with Mr. Wilson's moment-to-moment movements should be lessened. RF monitoring is sufficient to track Mr. Wilson's whereabouts, even if it does not provide as detailed a record as his current location monitoring. Further, if Mr. Wilson lived with his sister in Red Bluff, a small town in Northern California close to Sacramento, he would be far from the Mexican border and concerns about absconding would be significantly lessened. The reduced likelihood of absconding, in turn, means RF monitoring is sufficient.

15. The government also points to Ms. Wilson's arrest from 2012. That arrest occurred when she was 17 years old. An arrest alone means little—all the less so considering it occurred when she was still a juvenile. Ms. Wilson is now 27 years old and has two young children. Her alleged, unproven conduct from when she was 17 years old has nothing to do with the stability and security of her residence today.

16. The government's concern that Ms. Wilson may move in the future also does not detract from her ability to provide a stable residence. If and when she moves, as long as Pretrial approves her new residence, there should be no issue with Mr. Wilson moving with her to a new apartment. With all aspects of Nicole Wilson's living situation in mind, the Court can rest assured she would provide a stable and secure residence, and should approve the move.

17. Mr. Wilson has proven himself capable of following his conditions of release. Now that Ms. Siegel and Mr. Aguirre are no longer able to house him, Mr. Wilson should be permitted to move and live with Ms. Dennings and his son. Alternatively, if the Court's concerns about living with Ms. Dennings remain, he should be permitted to live with his sister Nicole Wilson.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED: March 24, 2022        */s/ Howard Shneider*
                                          Howard Shneider
                                        Deputy Federal Public Defender